## BILBY et al. v. HARRISON et al.

No. 15019—Opinion Filed June 17, 1924.

**1. Indians—Descent and Distribution—Creek Law.**

In this jurisdiction, under the decided cases construing the Creek law of descent and distribution, the Creek mother is held to be of nearer relation to the child than is the father; and that maternal kin is closer relation than the paternal kin of the same degree, based upon the premise that the father and mother are of equal degree of kin to the offspring.

**2. Same.**

The Creek law of descent and distribution provides that "in all cases where there are no children, the nearest relations shall inherit the property." And, where a full-blood Creek Indian died on December 27, 1899, intestate, unmarried, and without issue, leaving neither father nor mother, nor the parents of mother or father, nor any maternal uncle or aunt, him surviving, but leaves surviving a paternal uncle; and is enrolled, and certificate of selection of allotment for him issued on the 26th day of March, 1902, and patent thereafter issued to his heirs, and it is conceded that the inheritance is cast under the Creek law of descent and distribution, the paternal uncle will be held to be his nearest relation under the Creek law, and will take by inheritance the allotment of the deceased allottee to the exclusion, of the more remote maternal kin, based on the premise that father and mother are of equal degree of kin to the offspring; and upon the death of such paternal uncle in 1909, the property will pass to his heirs according to the law of descent and distribution of the state of Oklahoma, in the absence of conveyance or will by him made.

**3. Same—Right of Indian to Assert Title Though Residing on Land as Employe of Defendant's Tenant.**

Where a full-blood Creek Indian brings suit for possession of real estate, he is not estopped to assert his title and right to possession of the property by the mere that he was working for the defendants' tenant upon the land in controversy, for wages, and lives in a house located on some indefinite and undetermined part of the land at the time he files the suit.

**4. Appeal and Error—Jurisdiction—Time for Appeal.**

In matters involving the title and right to possession of real estate, the Supreme Court of the state of Oklahoma has appellate jurisdiction only; and in the absence of a petition in error, or, where the opposite party prosecutes appeal, a cross-petition in error, filed within the time prescribed by law for filing appeals, the appellate jurisdiction of this court is not invoked by filing a motion for a new trial in the trial court and the same being overruled there; and this court will refrain from expressing an opinion upon the merits of the contentions made.

**5. Judgment Sustained.**

Record examined; and held, that the judgment of the trial court in favor of Jimmy Harrison and against Russell I. Bilby and Nicholas V. Bilby, for an undivided one-third interest in the land in controversy, is supported by the record, and should be affirmed.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Wagoner County; Guy F. Nelson, Judge.

Action by Jimmy Harrison, Ellen Cooper, and Lizzie Franks against Russell I. Bilby, Nicholas V. Bilby et al., for possession of land and for damages for unlawful detention. Judgment for Jimmy Harrison for possession of an undivided one-third interest in the land in controversy. Defendants Russell I. Bilby and Nicholas V. Bilby appeal. Affirmed.

W. O. Rittenhouse and John C. Graves, for plaintiffs in error.

J. S. Severson, E. J. Broaddus, and Watts & Watts, for defendants in error.

Opinion by SHACKELFORD, C. The defendants in error, Jimmie Harrison, Lizzie Franks, and Ellen Cooper, were plaintiffs below, and Russell I. Bilby and Nicholas V. Bilby, with other parties, were the defendants below, and for convenience the parties will be referred to herein as they appeared in the trial court.

The plaintiffs filed this suit on February 25, 1922. By their petition they seek to recover the possession of the northeast quarter of section 18, township 19 N., range 16 E., in Wagoner county. It is alleged in the petition that the land was the allotment of Nero Harrison, an enrolled full-blood Creek Indian, who died on the 27th of December, 1899, and certificate of selection was made for the above described land for him on the 26th of March, 1902, and patents issued thereafter to his heirs. That he left surviving him as his sole heir an uncle, one Eli Harrison, also enrolled full-blood Creek Indian, who died intestate on the 1st of January, 1909, leaving him surviving his widow, Ellen Harrison, appearing here as Ellen Cooper, a son, Jimmy Harrison, and a daughter, Lizzie Franks, who appear here as plaintiffs. That by reason of the kinship they are the owners of the land described. That defendants have possession and have held it for five years, and have damaged plaintiffs $1,250. They pray for possession and damages. Copies of the certificate of selection and homestead patent are attached to the petition as parts thereof.

The other defendants besides Russell I. Bilby and Nicholas V. Bilby, it seems, had acquired rights under an oil and gas lease, and by stipulation it was agreed that they should not be disturbed by the litigation, but might proceed with development. They filed no pleadings, and hold subject to the determination of the case between the plaintiffs and the Bilbys. The answer of Russell I. and Nicholas V. Bilby is a general denial of all the allegations of the petition.

By agreement the cause was tried to the court without a jury; and judgment was entered for plaintiff Jimmie Harrison for an undivided one-third of the land, against Russell I. Bilby and Nicholas V. Bilby; and for the Bilbys as to the other two-thirds interest in the land; and the court denied relief to all the plaintiffs on their claim for damages.

Russell I. Bilby and Nicholas V. Bilby prosecute appeal from the judgment in favor of Jimmy Harrison, and assign the following errors:

(1) "The court erred in overruling the motion for a new trial of the plaintiff in error.

(2) "The court erred in overruling the demurrer of these plaintiffs in error to the evidence introduced on the part of the defendants in error in the court below.

(3) "The court erred in rendering judgment in favor of the defendant in error, Jimmy Harrison, and against these plain-tiffs in error, awarding to said Jimmy Harrison an undivided one-third interest in the lands and premises in controversy herein, for that said judgment and decree was and is contrary to the law."

It seems to be conceded that the descent of the Nero Harrison allotment, the land in question here, was cast under the Creek law of descent and distribution. So, the contention made by the defendants is to the effect that since Jimmy Harrison traces blood relation to the allottee through the father of the allottee, he cannot inherit from the allottee under any circumstances; or at least, not until he has affirmatively shown that there is no blood kin of the mother of the allottee in existence. Nero Harrison, the allottee, was the son of Enochie Harrison, father, and Lydia Harrison, mother, both of whom died before the death of Nero Harrison, who died intestate, unmarried, and childless on about the 27th day of December, 1899. He was the only surviving child of his parents. There seems to have been another child of these parents, but it died unmarried and childless prior to the death of the allottee. The mother of the allottee had no near relative living at the time of the death of the allottee. The father and mother, and brothers and sisters of the mother of the allottee were all dead long since. And, it does not appear that there was any child of a brother or sister of the mother of the allottee living at the time the allottee died. At the time of the death of the allottee the only brother of his father was surviving, his name being Eli Harrison. This brother of the father of the allottee died sometime in 1909, leaving him surviving his widow, Ellen Harrison, and a daughter, Lizzie Franks, nee Harrison, and a son, Jimmie Harrison, all three of whom appear as plaintiffs in this action. If we take as a premise to reason from, that the father and mother stand in equal degree of kinship to their offspring, there seems to be no question but that the plaintiffs are the nearest blood relatives of the allottee.

It is provided by the Creek law of descent and distribution, that "in all cases where there are no children, the nearest relations shall inherit the property."

The proposition urged here is, that so far as inheritance cast under the Creek law is concerned, the premise stated is entirely wrong, since under the Creek law and custom the father was not held to be of kin in any degree to the child; and the inherited property would pass under such law and custom, under the circumstances presented here to the blood kin of the mother in any degree, to the exclusion of the fath-

er or any blood relatives of the father. The proposition is presented with great earnestness, and with a meritorious and creditable knowledge of Creek lore. It can hardly be doubted but that such was the law and custom of the Creek Indians, and if this case were one of first impression we would feel inclined to give the reasoning and historical references made great weight in our consideration of this appeal. But, similar situations have been presented to this court. As we understand the cases, this court has given effect to the Creek law to the extent of holding that the mother was of nearer kin to the child than the father; and have given preference to the kin of the mother rather than to the kin of the father, when they appeared to be of the same degree of blood. based upon the premise that father and mother are of equal degree of kin to their offspring. And, if the argument had arisen here as between the paternal uncle and a maternal uncle or aunt of the allottee, there is no question but under the decided cases preference should be given to the maternal uncle or aunt. Two of the plaintiffs are cousins of the allottee through the blood of the father of the allottee; and if there were claimants here, cousins of the allottee through the blood of the mother, the uncles and aunts on both sides having died before the death of the allottee, the decided cases would require us to hold that the maternal cousins of the allottee are some fraction of a degree of kinship closer of kin to the allottee than these paternal cousins. But, such is not the case. It seems plain from the record that there was no maternal uncle or aunt living at the time the allottee died; and there was a paternal uncle living. We know of no case where it has been held that under the Creek law the father or his blood kindred, could not, under any circumstances, take the inheritable property; nor has it ever been held that the kindred of the father were excluded by the more remote kindred of the mother.

In Barnett et al. v. Way et al., 29 Okla. 780, 119 Pac. 418. the property involved was the allotment of Cita Barnett, deceased, the inheritance cast under the Creek law, she having died intestate, unmarried, and childless, the mother having died prior to Cita's death; and at the time of her death her father was living. The controversy arose as to who would take Cita's property, the father or her half-sisters and brothers by the blood of the mother. The court held that the father would take as nearer of kin than the half-brothers and sisters by the blood of the mother; and upon his subsequent death the property passed to his heirs.

In Scott v. Jacobs et al., 40 Okla. 522, 140 Pac. 148. the contention arose over the allotment of a Creek minor, two years old at its death, and who left it surviving its father and a maternal half-sister, and the inheritance cast under the Creek law. The court held that the father was a nearer relation than the maternal half-sister, and that he would take the property as the nearest of kin of the allottee.

In Haney et al. v. Anderson et al., 72 Okla. 62, 178 Pac. 120, the question was, who should take the property, the inheritance cast under the Creek law, the maternal uncle or the paternal uncles and aunts. The court held that under the Creek law, as contended in De Graffenreid et al. v. Iowa Land & Trust Co., 20 Okla. 687, 95 Pac. 624, the maternal uncle was nearer blood relation than the paternal uncles and aunts; and that the maternal uncle would take the property to the exclusion of the paternal kin of the same degree, based upon the premise that father and mother are of the same degree of kinship to a child.

In the De Graffenreid Case, supra, the mother was held to be the nearest relative under the Creek law, as against the claim of the father to the right to inherit property, the descent being cast under the Creek law; and the mother was permitted to take the property to the exclusion of the father.

It is argued by eminent counsel for defendants that the reasoning in the above cited cases is wrong, and that the court should have followed the correct theory of kinship, which was, as is claimed, that the father was of no blood kin to the child. Whether counsel are right or wrong, in the contention made, we shall not undertake to determine.. It is sufficient to say that so long as the cases cited are held to be the law, we feel that they are controlling upon the proposition under consideration. That is. upon the death of Nero Harrison, there being no maternal uncles or aunts living, the paternal uncle, Eli Harrison, would inherit the property as the nearest blood relation of the allottee; and upon his death in 1909 the property passed to his heirs according to the law of descent and distribution of the state of Oklahoma. That is no longer an open question in this jurisdiction.

It appears from the record that the land is held by Russell I. and Nicholas V. Bilby by reason of a sale of the land made by the legal representative of Eli Harrison after his death, and by deeds of Ellen Harrison (Cooper here) and Lizzie Franks, nee Harrison, the widow and daughter of Eli Harrison. At the time of the sale Jimmy Harrison was a minor, and he has never made

a deed. It seems to be conceded that the sale of the property by the legal representative of Eli Harrison was void, or at least was not effective to pass title as to Jimmy Harrison.

There is another contention made by defendants that would affect the right of Jimmy Harrison to recover in this case, if the contention could be maintained. The proof tends to show that at the time the suit was filed, Jimmy Harrison was living in a house located upon some part of the land in controversy; and was either a tenant of the defendants, or was a subtenant; and, being a tenant, holding either directly or indirectly under the defendants, the defendants contend that Jimmy Harrison cannot maintain an ejectment suit without first vacating the land. The proof tends to show that Jimmy Harrison was working for wages for the tenant of the defendants, and occupied a house on the premises; but just where the house is located nobody undertakes to tell. The estoppel contended for might be effective as to the part of the premises occupied by Jimmie Harrison, but we think the burden was on the defendants to establish the facts that would amount to an estoppel against him. The burden was on the defendants to show what part of the land he was estopped to claim in his ejectment suit, and defendants did not establish by their proof what part of the land Jimmy Harrison occupied.

In 24 Cyc. 950, under the head of Landlord and Tenant, the general rule is announced that estoppel to deny title does not extend to property owned by the landlord but not included in the tenancy.

There is another reason why Jimmy Harrison should not be held to be estopped to assert his rights. That reason is that Jimmy Harrison is a full-blood Creek Indian. It was, in effect, held in Goodrum v. Buffalo, 162 Fed. 817, 89 C. C. A. 525, and in Tidal Oil Co. v. Flanagan, 87 Okla. 231, 209 Pac. 729, that estoppels do not apply against restricted Indians.

After a careful study of the record and the briefs and authorities cited therein, we have concluded that the judgment of the trial court in favor of Jimmy Harrison and against Russell I. Bilby and Nicholas V. Bilby, for an undivided one-third of the land in controversy is correct, and should be upheld. We recommend that the judgment of the trial court in that particular be affirmed.

The plaintiffs Ellen Cooper and Lizzie Franks make the contention here that defendants Russell I. Bilby and Nicholas V. Bilby did not make out a defense against their claim to the land in controversy, for the reason that they failed to show that the deeds on which they rely were approved by the court having jurisdiction of the administration of the estate of the deceased allottee, from whom they inherited the land through Eli Harrison, the brother of the father of the allottee; and that the court erred in rendering judgment against them and in favor of the defendants, upholding the deeds. The record here discloses that these plaintiffs filed a motion for a new trial raising the question of the sufficiency of the evidence to support the judgment rendered against them and in favor of the defendants; and that the judgment rendered against them is contrary to the law. The record also discloses that no petition in error was filed by these plaintiffs, nor was there filed a cross-petition in error by them.

This court is a court of appellate jurisdiction only in such matters, and has no original jurisdiction. Asking this court to pass upon and decide the questions presented and argued in their brief upon this branch of the case, is, in effect, asking this court to take original jurisdiction and give them a trial upon the record without the formality of presenting the questions regularly by petition or cross-petition in error on appeal. The mere filing of a motion for a new trial in the trial court, and having it passed upon there, is not sufficient to invoke the appellate jurisdiction of this court, in the absence of a petition or cross-petition in error filed in this court within the time fixed by law for filing appeals. We express no opinion as to the merits of the contentions made by these plaintiffs concerning the judgment rendered against them.

By the Court: It is so ordered.