## UNITED STATES v. BROWN et al.

(District Court, N. D. Oklahoma. November 13, 1926.)

No. 18.

**1. Mines and minerals ☞74.**

Under Comp. St. Okl. 1921, § 260, purchaser of an oil and gas lease with knowledge of pending action for cancellation acquired no greater interest in lease than its assignor.

**2. Mines and minerals ☞73½.**

Oil and gas lease for term of years and so long as oil or gas is found expires by its own terms when oil or gas is not found in paying quantities after expiration of term of years.

**3. Mines and minerals ☞73½.**

Payment of royalty, which is not due, does not continue oil and gas lease, which has expired by virtue of its own terms.

**4. Indians ☞16(7).**

Doctrine of estoppel respecting payment of royalty for producing gas well will not operate against a restricted full-blood Indian.

**5. Estoppel ☞62(2).**

Purchaser of oil and gas lease cannot urge estoppel because of payment of royalty against United States, where United States is attempting to establish validity of lease in favor of purchaser.

**6. Mines and minerals ☞78(1).**

Failure of lessee under oil and gas lease, to undertake development after disconnecting gas well for a period of 10 months, held unreasonable and sufficient to defeat lease conditioned on oil or gas being found in paying quantities.

**7. Mines and minerals ☞77.**

To constitute "abandonment" of oil and gas lease, there must be coincidence of act and intention.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Abandon–Abandonment.]

**8. Indians ☞16(5).**

Superintendent of the Five Civilized Tribes has no power to continue in force oil lease on lands of restricted full-blood Indian after its expiration by its own terms.

**9. Indians ☞16(1).**

Superintendent of the Five Civilized Tribes has no power to lease restricted lands of Indian heirs or allottees, but has power only to approve leases executed by them.

**10. Indians ☞16(3).**

Secretary of the Interior has no power to determine whether terms of oil and gas lease on Indian land have been complied with, or to make findings of facts which are conclusive.

**11. Indians ☞16(6)—Purchaser of oil and gas lease on Indian land in reliance on records is entitled, on cancellation of lease, to reimbursement for expenditures.**

Purchaser of oil and gas lease on Indian land, in reliance on records of Superintendent of the Five Civilized Tribes, is entitled, on cancellation of lease, to reimbursement for expenditures made in development and for royalties paid thereon, after deducting amount received from production on lease.

In Equity. Action for injunction and to quiet title by the United States, in its own behalf and on behalf of Louisa Brown, against Louisa Brown and another. Decree in accordance with opinion.

Louis N. Stivers, Asst. U. S. Atty., of Tulsa, Okl.

Wash E. Hudson and George W. Reed, Jr., both of Tulsa, Okl., for defendants Brown and Hudson.

Edgar A. De Meules, of Tulsa, Okl. (Ramsey, De Meules & Martin, of Tulsa, Okl., of counsel), for defendant Thompson & Black, Inc.

KENNAMER, District Judge. This action was instituted by the United States in its own behalf and on behalf of Louisa Brown, against Louisa Brown and another, having as its object enjoining the defendants Louisa Brown and Wash Hudson from further prosecuting a suit which they had commenced against the other defendants in the district court of Tulsa county, Okl., and to further restrain these defendants from setting up or claiming any interest in and to an oil and gas mining lease upon certain restricted Indian lands. The land involved was allotted to one Charlie Berryhill, a full-blood member of the Creek Indian Tribe. On April 22, 1911, a departmental oil and gas mining lease was executed by the guardian of Charlie Berryhill, covering the allotment, to Minshall and Sweeney, which lease was approved by the Secretary of the Interior on the 14th day of

July, 1911. It was provided in the lease that it was to continue for a term of 10 years from the date of approval and as long thereafter as oil or gas was found in paying quantities. On May 25, 1912, the lease was assigned to the Mary Oil & Gas Company. Charlie Berryhill died in February, 1918, leaving as his sole heir his mother, Louisa Brown, the defendant herein, who is also a full-blood member of the Creek Tribe of Indians.

The defendant Mary Oil & Gas Company drilled three gas wells upon the lands in controversy during the term of the lease, but two of the wells were soon plugged, and one gas well was connected with the pipe line. This well quit producing and ceased putting gas in the line on or about April 1, 1923, for at about this date the connections were broken and the well disconnected from the pipe line. An attempt was made to pull the tubing and packer, and the tubing parted above the packer. Upon attempting to pull the casing, at the same time, the casing parted and a great amount of mud, water, and débris partially filled the hole.

In accordance with the provisions of the lease, the Mary Oil & Gas Company, lessee, paid the Superintendent of the Five Civilized Tribes the sum of $300 per year, as royalty on a producing gas well, making its last payment December 7, 1923, subsequent to the disconnecting from the pipe line of the only gas well on the lease that had not been plugged. It was clearly shown that the royalty payment was made by officials and employees of the Mary Oil & Gas Company who had no personal knowledge concerning the physical condition of the well, or that it had not placed any gas in the pipe line for several months prior to the date of payment. This royalty payment was for the period expiring about December, 1924; but prior to the expiration of the period, on about February 10, 1924, the lessee hauled rig timbers upon the lease in question and shortly thereafter commenced the drilling of a well. The defendant Wash E. Hudson is a practicing attorney, and was employed by the defendant Louisa Brown to cancel the lease under which the Mary Oil & Gas Company had operated. On February 14, 1924, Louisa Brown executed an oil and gas mining lease to defendant Hudson, covering a portion of the lands in question, and also executed a contract of employment. The contract and lease to defendant Hudson were duly approved by the county court of Creek county, Okl.

In accordance with the terms of the contract, defendant Hudson filed a suit in the district court of Tulsa county, Okl., wherein Louisa Brown, defendant herein, was plaintiff, and the Mary Oil & Gas Company was defendant, seeking a judicial cancellation of the oil and gas lease involved herein and to quiet her title to the premises. The defendant Thompson & Black, Inc., with a view of purchasing the lease covering the land in controversy, investigated the records of the Superintendent of the Five Civilized Tribes, and was informed that the records showed the lease to be in good standing as a producing gas lease and that the royalty had been paid up until December, 1924. This information was given Thompson & Black, Inc., about February 13, 1924. On about February 15, 1924, the Superintendent for the Five Civilized Tribes caused a United States oil inspector to visit and examine the lease, whose report discloses that the gas well had been disconnected from the pipe line and that the hole was well filled with mud and water. He also reported that there was some gas in the well, by reason of the fact that it would light when a match was applied. Defendant Thompson & Black, Inc., made several inquiries concerning the validity of the lease, having knowledge of the action which had been filed in the district court of Tulsa county, Okl., for cancellation of the lease, and upon being informed by counsel and by the Superintendent that the lease was in good standing, purchased the same from the Mary Oil & Gas Company for a valuable consideration, which assignment was approved by the Secretary of the Interior. A stipulation was made by the parties to the action in the state district court permitting the drilling of the well which had been commenced prior to the filing of the suit, and this well was completed by defendant Thompson & Black, Inc., as a producing oil well. Upon demand of the Superintendent for the Five Civilized Tribes, defendant Thompson & Black, Inc., assignee of the lease, was required to drill other wells as offset wells, which are producing oil wells. The evidence shows that defendant Thompson & Black, Inc., was required to drill three wells upon the lease by the Superintendent, and was further required to pay to the Superintendent for the Five Civilized Tribes the sum of $2,075 as offset gas rentals.

[1] Defendant Thompson & Black, Inc., purchased the lease with knowledge of the action pending in the district court of Tulsa county, Okl., for the cancellation of the very lease it acquired. Thus its standing should be no greater than that of its assignor, unless altered by the facts in the particular case. Section 260, Compiled Statutes of Oklahoma of

1921, provides: "When the petition has been filed, the action is pending, so as to charge third persons with notice of its pendency, and while pending no interests can be acquired by third persons in the subject-matter thereof as against the plaintiff's title. * * *" See Shufeldt v. Jefcoat, 50 Okl. 790, 151 P. 595; Guaranty State Bank of Okmulgee v. Pratt, 72 Okl. 244, 180 P. 376; Smith v. Curreathers Merc. Co., 76 Okl. 170, 184 P. 102. It follows that the defendant Thompson & Black, Inc., can acquire no greater interest in the lease or lands involved in this action than its assignor, Mary Oil '& Gas Company. However, in equity and fair dealing, it may be entitled to reimbursement for certain expenditures it has made by reason of demands having been made by the Superintendent for the Five Civilized Tribes.

[2-5] The evidence clearly establishes that the term of the lease has expired so far as the term is expressed in years. The lease has been continued in force since along in 1921 by reason of the provision, "and as long thereafter as oil or gas is found in paying quantities" and by the payment of an annual royalty on a producing gas well. Certainly, as soon as oil or gas is not found in paying quantities and as soon as there is no producing gas well upon the premises, the lease expires according to its very terms. The payment of a royalty, when no royalty is due, cannot continue a lease in force which has expired by virtue of its own terms and provisions. It was clearly established that the defendant Louisa Brown had no actual knowledge of the physical condition of the gas well from April, 1923, until the first part of February, 1924. The royalty money was sent to the Superintendent for the Five Civilized Tribes for the defendant Brown. As defendant Brown is a restricted, full-blood Indian, the doctrine of estoppel will not operate against her with respect to the payment of the royalty for a producing gas well. Sperry Oil & Gas Co. v. Chisholm (C. C. A.) 282 F. 93; Chisholm v. Creek & Ind. Dev. Co. (D. C.) 273 F. 589; Midland Oil Co. v. Turner, 179 F. 74, 102 C. C. A. 386; Goodrum v. Buffalo, 162 F. 817, 89 C. C. A. 525; Tidal Oil Co. v. Flanagan, 87 Okl. 231, 209 P. 729; Bilby v. Harrison, 100 Okl. 67, 227 P. 407, 410. Certainly defendant Thompson & Black, Inc., cannot urge an estoppel as against the plaintiff, the United States, for the very obvious reason that the United States is attempting to establish the validity of the lease in favor of defendant Thompson & Black, Inc., and to quiet its title as against defendants Brown and Hudson.

[6,7] The evidence establishes the fact that the only well which had not been plugged was a gas well, and the well which is relied upon for the continuance of the lease was disconnected from the pipe line to which it had furnished gas; that the attempt at pulling the tubing and packer resulted in the tubing parting above the packer, and a similar attempt with the casing produced a like result, causing the well to become greatly filled with mud and water. This continued from about April 1, 1923, to February, 1924, before anything was undertaken by way of development of the lease. An unreasonable length of time elapsed before further development of the premises was undertaken. It is undisputed that nothing was attempted by way of continuing the producing gas well. But for the payment of the royalty, which was done by agents without personal knowledge of the condition of the gas well, and that the gas well was not at the time of payment connected with the pipe line, there could be strong evidence of an abandonment. I am of the opinion that the lessee, if in fact there has not been an abandonment, has failed to comply with the obligations imposed by the covenants of the lease, implied or expressed, to produce oil or gas in paying quantities. To constitute abandonment, there must be a coincidence of act and intention, and the evidence adduced does not establish a definite intention to abandon. However, the evidence conclusively establishes that the lease has expired by reason of the failure of the lessee or its assignee to comply with the obligations imposed by the covenants of the lease.

[8,9] It is not within the power of the Superintendent of the Five Civilized Tribes to continue in force a lease covering lands of a restricted full-blood Indian which has expired by its own terms or which has expired by reason of the failure of the lessee to comply with the obligations imposed by the covenants in the lease. His duties are prescribed by Acts of Congress, and no such power is conferred upon him. He has no power to lease the restricted lands of Indian heirs or allottees, but has power only to approve leases executed by them. Jennings v. Wood, 192 F. 507, 112 C. C. A. 657.

[10] It is urged that, since the lands in controversy are restricted lands of a full-blood Indian, they are under the exclusive supervision and control of the Secretary of the Interior, and that the lease was made pursuant to certain Acts of Congress and the rules and regulations prescribed by the Secretary of the Interior, all of which is true. It is then insisted that, since it was the duty of the De-

partment of the Interior to construe and execute the various acts of Congress pertaining to Indian affairs, the decision of the Superintendent for the Five Civilized Tribes, acting for the Secretary of the Interior, that the lease was in full force and effect is conclusive in the absence of fraud, and that his decision is not subject to review by a court. Undoubtedly, if the determination of the existence of a lease was delegated to the Secretary of the Interior, his findings as to the facts should not be disturbed unless it is shown to have been fraudulent, or that he acted arbitrarily. However, in the instant case, such a determination has not been delegated to the Secretary of the Interior or to the Superintendent for the Five Civilized Tribes. Congress has not given the Secretary of the Interior this duty; neither has the Secretary promulgated any rule or regulation delegating such a duty to the Superintendent. Rules have been established, providing that the capacity of wells shall be determined under supervision of the Secretary of the Interior for the purpose of determining the amount of royalty due the Indian. Such a delegation can in no manner be construed to delegate the duty of determining whether or not the terms of a lease have been complied with, and to make findings of facts which are conclusive and binding.

[11] I am of the opinion that the oil and gas mining lease, which has been assigned to defendant Thompson & Black, Inc., has expired because of the failure of the lessee to further explore and develop the lease within a reasonable length of time after cessation of production, and because of the failure of the lessee to comply with the obligations contained in the covenants of the lease. As defendant Thompson & Black, Inc., took an assignment of the lease pendente lite, it can have no higher standing than its assignor, defendant Mary Oil & Gas Company, and should not be repaid the consideration paid by it for the assignment. However, since defendant Thompson & Black, Inc., took the assignment relying upon the records of the Superintendent for the Five Civilized Tribes that the lease was valid and subsisting, it should be reimbursed for all expenditures made in developing the lease, whether such drilling was upon the demand of the Superintendent or not. Whatever has been done by way of development resulted in an increase in the value of the premises, and those regaining the lease should take it subject to such a charge.

Defendant Brown should pay defendant Thompson & Black, Inc., that portion of the sum of $2,075 paid the Superintendent for offset royalties which covered the period of time at which the lease in controversy expired by failure to comply with the obligations contained in the lease. This money was paid to the Superintendent for defendant Brown for a period when the lease was not in effect. Defendant Thompson & Black, Inc., should account for all moneys received from the production of oil or gas from the lease in question and should account strictly for all expenditures made in developing the lease. The amounts received from the production of oil and gas should be credited upon the amounts expended.

It is ordered that a decree be drawn in accordance with the views herein expressed.