**GILROY v. WHITE EAGLE OIL CO. et al.**

**Civ. No. 2603.**

United States District Court
N. D. Oklahoma.
March 26, 1952.

F. A. Bodovitz, Tulsa, Okl., for plaintiff.

Eugene O. Monnet and Jack N. Hays, Tulsa, Okl., for defendants.

WALLACE, District Judge.

This is an action seeking specific performance of an alleged contract or for damages in lieu thereof, or in the alternative to have a constructive trust impressed upon certain oil and gas leases now owned by the defendant. Jurisdiction of the court is based upon diversity of citizenship and an amount in controversy exceeding $3,000, exclusive of interest and costs.

On or about the 8th day of August, 1944, the National Refining Company, an Ohio Corporation, entered into a contract in writing with Helmerich & Payne, Inc., a Delaware corporation with principal offices in Tulsa, Oklahoma, by the terms of which Helmerich & Payne assigned an undivided one-half interest in and to oil and gas leases covering some 13,040 acres of land to the National Refining Company and the National Refining Company assigned an undivided one-half interest in and to oil and gas leases covering some 21,860 acres of land to Helmerich & Payne. All of the oil and gas leases which were involved in the assignments, each to the other, covered tracts of land in the Hugoton gas field of Western Kansas. Included in the agreement and assignment was a lease covering 1,920 acres of land in Finney County, Kansas, described as Section Five, and Lots 1, 2, 3 and 4, and the East Half of the West Half of Section Seven and Section Eight, all in Township Twenty-five South, Range Thirty-four West, which land is referred to herein as the Wagner lease. The afore-mentioned tract was a part of the 21,860 acres of land held under lease by the National Refining Company and of

which Helmerich & Payne became part owner under the contract and assignments.

Paragraph seven of the contract by and between the National Refining Company and Helmerich & Payne, Inc. provided as follows:

"Except as provided in Paragraphs 5 and 6 hereof, all cost and expense, including delay rentals, * * *, shall be borne and paid one-half by National, and one-half by H & P, and the operation and development of·the property shall be under the supervision and direction of H & P, under and in accordance with the provisions of the Accounting Procedure, a copy of which is attached hereto, * * *."

In the Accounting Procedure schedule attached to the contract, it was provided that the operator shall charge the joint account with delay or other rentals *"when such rentals are paid by Operator for the joint account."* (Emphasis added).

Under the contract and assignments by and between the National Refining Company and Helmerich & Payne, Inc., those parties became mining partners. There is a technical objection as to the existence of a mining partnership in that the Wagner lease was not actually jointly operated or developed (the lease had no wells upon it at the time of the assignment), but it is conceded that the intent, purpose, and effect of the contract was to create a mining partnership.

At the trial of this case it was disclosed that before the contract of August 8, 1944, was executed, there had been some discussion as to which partner was to have the duty of making the payment of delay rentals on the undeveloped leases. Any prior. or contemporaneous agreements merged into the written contract, however, and in so far as the agreement provides therefor, the rights and liabilities of the partners among themselves are to be determined by the provisions of the partnership contract. The agreement, although not silent upon payment of delay rentals, does not expressly put the burden of such duty upon either of the partners unless it may be implied that this was a contractual duty chargeable to Helmerich & Payne because of its being the operator and developer of the jointly owned properties. Operation and development connote the drilling of wells and the production of oil and gas with its attending functions, however, and the responsibility of retaining undeveloped leases by the timely payment of delay rentals ordinarily does not come within the purview of the definitions of "operation" and "development".

Correspondence following the execution of the afore-mentioned contract is indicative of the misunderstanding of the partners as to any contractual right or duty concerning the payment of delay rentals. A letter dated October 28, 1944, from the National Refining Company to Helmerich & Payne stated in part: "Inasmuch as you are now the operator of the leases, we assumed you would take care of the payment of future rentals and bill us for our one-half. If this is not your intention, * * *." The reply to this letter was dated October 30, 1944, but neither affirmed nor denied the responsibility which the National Refining Company had evidently assumed would be undertaken by its partner. Under these circumstances the responsibility of such payments would ordinarily fall upon each partner equally. At a later date, however, Helmerich & Payne did send a delay rental check to the lessor of the Wagner lease, and from the testimony elicited at the trial and from the exhibits introduced into evidence the court has come to the conclusion that although there was no contractual duty imposed upon Helmerich & Payne to make the payment of future delay rentals, still it was a voluntary undertaking assumed by it as one of the partners of the mining partnership. Having assumed such duty voluntarily, any breach of that duty through fraud, bad faith, misconduct, or negligence would therefore give rise to a cause of action by the other partner for any loss sustained. An action arising out of the breach of this particular duty, such duty not having been imposed by contract, would be an action *ex delicto* and not one sounding in contract. This point becomes very important as affecting the rights of the parties to this suit in the light of subsequent transactions which gave rise to this litigation.

Before proceeding with this opinion, it might be well to clarify the respective positions of the named defendants. The White Eagle Oil Company, a Delaware Corporation, apparently was either the successor to the rights of Helmerich & Payne, Inc. or Helmerich & Payne, Inc. became the White Eagle Oil Company by a change of name sometime during the latter part of 1944. In any event, the rights and liabilities of the two named defendants are conceded to be one and the same just as though there had been a mere change of name of the corporation. The remainder of this opinion shall refer to the defendant corporations as the defendant.

After the original contract of August 8, 1944, the first delay rental payable under the lease covering the Wagner land was on or before August 15, 1945. The defendant during the month of August, 1945, mailed a check for the Wagner delay rentals from its Tulsa office addressed to the credit of the lessors in the Kearny County Bank at Lakin, Kansas, which was the depository bank designated in the Wagner lease. The envelope containing the check was postmarked August 18, 1945, and did not arrive at the depository bank until after the due date. Shortly thereafter, the National Refining Company received a notice from the lessors of the Wagner lease that said lease had terminated by its own terms under the "unless" clause, for failure to pay the delay rental on time. The termination of the lease was also called to the attention of the defendant.

On August 20, 1945, the defendant wrote a letter to Mr. Peirce, of the National Refining Company, concerning the Wagner lease and stating that the delay rental had been paid on time. The substance of this letter was that the envelope containing the check for the rental had been deposited in ample time to reach the depository bank before the 15th of August, 1945; that one of the employees of the defendant had mailed the check and would make an affidavit to the effect that she had personally deposited the check in the mails either on the 11th or the 13th of the month. After this letter to the National Refining Company, Mr. Broadhurst, Vice President of the

defendant, contacted the lessor of the Wagner lease and attempted to straighten out the difficulty. This proved to be unavailing since other parties were attempting to top lease the lands at that time.

On September 19, 1945, the defendant again contacted the National Refining Company and informed it that there was no possibility of settling the Wagner dispute even though an offer of settlement which the defendant considered more than fair had been made. It was decided at that time that an action to quiet title in the lessees would have to be brought in order to retain the lease, and preparations were made to institute the suit. The defendant sought and gained the permission of the National Refining Company to join it as a coparty plaintiff in the quiet title suit against the lessors of the Wagner lands. Consent to join the National Refining Company as a party plaintiff in that suit was expressly given by a telegram from Mr. Peirce to the defendant herein. This consent was given upon the representation of the defendant that the rental had been paid on time, but it was also given with the knowledge that the letter containing the delay rental had been postmarked the 18th day of August, 1945. Subsequent correspondence between the defendant; the National Refining Company; and an attorney who represented the National Refining Company, indicates that no objection to the action of the defendant nor its good faith was ever questioned even though the outcome of the suit did not appear too favorable.

The suit to quiet title to the oil and gas lease covering the Wagner lands was filed in the District Court of Kansas on October 3, 1945. On October 26, 1945, Mr. Peirce wrote a letter to Mr. Eugene Monnet, attorney for the defendant, stating in effect that he hoped the quiet title suit would be successful and offered further assistance if needed. This same letter also stated that it was the understanding of Mr. Peirce that the defendant intended to protect the National Refining Company from any loss or expense connected with the Wagner lands, and that one way it could be done is to substitute comparable acreage in the Hugoton field.

Pending the litigation concerning the Wagner lands, the National Refining Company changed its name to the William Whitman Co. This change in name took place on or about December 26, 1945. On January 8, 1946, the Whitman Co., by assignment, transferred an undivided three-sixteenths interest in the leases held jointly with the defendant, including the Wagner lands, to Wallace Gilroy and an undivided three-sixteenths interest in the jointly owned leases to Helene D. Gilroy, wife of Wallace Gilroy. These assignments were accepted with actual notice of the then pending litigation concerning the Wagner lease and, in fact, the assignment specifically sets out that the interest assigned was subject to the outcome of the litigation then pending. The Gilroys made this purchase without any representation from the defendant which might create an estoppel; in fact, before the purchase the Gilroys had never had any contact with the defendant. Wallace Gilroy subsequently acquired his wife's three-sixteenths interest by an assignment dated June 30, 1947.

During the month of February, 1946, Mr. Broadhurst of the defendant corporation, Mr. Peirce of the Whitman Company, Mr. Gilroy, and several attorneys representing the various parties, met in Kansas City to discuss some business concerning the jointly held interests. At this meeting, there was also some discussion concerning the Wagner lands and what the defendant intended to do about them in so far as the Whitman and Gilroy interests were concerned. No specific agreement was made, but as a result of that meeting, the defendant on February 28, 1946, addressed a letter to the Whitman Co., Wallace Gilroy and Helene D. Gilroy, which is as follows:

"Dear Sirs and Madam:

"While we do not acknowledge any legal obligations, but do desire to be fair in the premises, we are writing you relative to the above lease.

"Payment of lease rental on the above jointly owned lease (½ Helmerich & Payne, Inc., and ½ National Refining Company) was made through our office, by depositing rental check in the United States mail depository in the Philtower Building on Saturday afternoon, August 11, 1945, which was ample time for such rental to reach the depository Bank before due date, August 15, 1945. For some reason unknown to us the rental did not reach said Bank until after said due date; lessors refused to accept same, and litigation is now pending regarding acceptance of this rental by land owner.

"In event we should not prevail in this lawsuit, but lose the lease on the above three sections, 1920 acres, we agree to assign to William Whitman Company, Inc., formerly named National Refining Company, oil and gas leases in the proven area of the Hugoton gas field, either full or part interest, whereby they will have and own a full 240 acre interest therein; and to Wallace Gilroy and Helene D. Gilroy, assignees of National Refining Company, like leases giving to them a full 720 acre interest.

"The delivery to you of such assignments shall constitute restitution and/or compensation in full for any loss you may have sustained by reason of the loss of your respective interest in the said Wagner lease, now in litigation.

"This letter is in triplicate, each copy of which shall be executed by all parties and deemed an original.

"Very truly yours,
"White Eagle Oil Company
(formerly named Helmerich
& Payne, Inc.)
"By /s/ William Broadhurst
Vice President
"The foregoing letter is accepted this———
day of March, A. D. 1946.
"William Whitman Company, Inc.,
By ————————————————
Vice President

————————————————
Wallace Gilroy

————————————————
Helene D. Gilroy

There was some correspondence between the defendant and the Whitman Company following this offer, but the offer was never formally accepted by any of the parties by execution of the above letter.

Sometime prior to May 1, 1946, the land in controversy in the quiet title suit was

top leased by a Mr. Koch who approached the defendant with a proposition to the effect that he would pay $10,000 to settle the lawsuit if he would then be assigned a one-half interest in the lease. This offer was turned down by the defendant and the information conveyed to Mr. Peirce and Mr. Neuner, attorney for the Gilroys, in a letter dated May 1, 1946, in which Mr. Broadhurst optimistically took the position that the Koch offer indicated that the suit would ultimately be in favor of the defendant and the National Refining Company.

The Whitman Company assigned to the Alberton Corporation a one-eighth undivided interest in all of the jointly owned leases including the Wagner lease on or about the 23rd day of April, 1946, and this effectively disposed of all the interest which the Whitman Company had in the properties which were affected by the contract of August 8, 1944. This assignment, like the one to the Gilroys, was made while the Wagner lands were in litigation and the assignment was expressly made subject to the outcome of the quiet title suit then in process in the Kansas court. A separate suit of similar import to this one was filed by the Alberton Corporation against the defendant, and this point is brought out merely to show that the William Whitman Company did not retain any interest in the properties and is not involved in this litigation.

The quiet title suit in Kansas turned out to be adverse to the partners and the lease was declared to have ended by its own terms for failure to pay the delay rental on time. Judgment was entered on January 13, 1947, in favor of the lessor. A motion for a new trial was overruled on January 8, 1948, and upon appeal to the Court of Appeals for the 10th Circuit, the lower court's decision was affirmed July 14, 1948.

There were several conversations and a great deal of correspondence between the defendant and the assignees of the William Whitman Company concerning the Wagner lease during the years 1947 and 1948, but no agreement or understanding was ever reached. The particular incidents and other events occurring during 1947, 1948 and 1949, concerning the parties to this litigation do not shed any light upon this case in view of the decision to be rendered and therefore are not discussed herein.

The original complaint filed in this case sought specific performance of a contract or money damages in lieu thereof. The contract sought to be specifically enforced is one allegedly growing out of the offer contained in the letter of February 28, 1946 (set out herein) and a purported acceptance some two and one-half years later. After this suit was instituted, it came to the attention of the plaintiff that the defendant had reacquired the Wagner lease from a third party and by a supplemental bill of complaint sought to have a constructive trust impressed upon the lands in favor of the plaintiff. At the trial of this case, the plaintiff evidently abandoned his claim for money damages for no proof of any value of the lost lease was offered. Plaintiff's greatest reliance was put upon specific enforcement of the alleged contract, with even greater emphasis upon the theory that a constructive trust should be impressed upon the reacquired Wagner lease.

There are two or possibly three questions for the court to determine. First, was there a contract as alleged by the plaintiff?; second, if there was such a contract is is definite enough in its terms to be subject to specific performance?; and third, should the court sitting as a court of equity impress a constructive trust upon the Wagner lands in favor of the plaintiff? The answers to these questions may be developed with greater clarity and precision by referring back to the relations between the original partners of the mining partnership created by the contract of August 8, 1944, and following the events in chronological order.

During the first part of the month of August, 1945, the defendant and the National Refining Company were partners in a mining partnership. One of their jointly owned properties was the Wagner lease. This particular lease terminated by its own terms under the "unless" clause when the delay rental was not timely received by the lessor, the date of termination being August 15, 1945. A quiet title suit was instituted by this defendant, as plaintiff, against the lessor of the Wagner lease, said suit

having been commenced on October 3, 1945, in the federal District Court of Kansas. The evidence in this case discloses that the defendant vigorously attempted to retain the Wagner lease, contending at all times that the August 15, 1945, delay rental had been timely mailed. This stand of the defendant was approved and joined in by the National Refining Company, not only on the representation of the defendant that the delay rental had been paid on time, but also with the knowledge that the envelope containing the Wagner rental was postmarked at Tulsa on the 18th day of August, 1945.

■ As a general rule a partner's remedy against another is by an accounting in equity and not by an action at law; but there are exceptions to this rule under certain circumstances, as where there is nothing to require an accounting. Such would have been the situation had the National Refining Company been inclined to press an action against its partner, the defendant herein, upon learning of the loss of the Wagner lease. The court is not called upon to pass on the question as to whether or not the National Refining Company or its successor, the William Whitman Company, had a cause of action against its partner for the loss of the Wagner lease, but it is doubtful that any action would be successful in view of the voluntary appearance of the National Refining Company as a party plaintiff in the quiet title suit instituted in the Kansas court to quiet title to the Wagner lease. There is no evidence of bad faith, fraud, or culpable negligence on the part of the defendant, causing the loss of the Wagner lease other than the fact that the ultimate outcome of the suit was against the lessees. On the other hand, the defendant maintained at all times that it had paid the delay rental on time even though at a loss to explain why the rental check was delayed, and the evidence is that it prosecuted the quiet title action with all sincerity, fervor, and earnestness in order to protect its own interests as well as those of its partner in the Wagner lease.

■ True, the federal District Court of Kansas judicially determined that the delay rental for the Wagner lease had not been paid on time for the year beginning August 15, 1945, and this decision, National Refining Co. v. Wagner, affirmed in the Court of Appeals, 10th Circuit, 169 F.2d 43, confirmed the contention of the lessors of the Wagner lands that the lease had terminated on August 15, 1945. That decision did not have the effect that the plaintiff in this suit so earnestly contends, i. e., that the defendant knew at all times that the delay rental on the Wagner lease had not been mailed on time; and that representation to its partner that the payment had been made on time was false and so known to the defendant. There was no proof offered to the effect that the defendant had wilfully or with knowledge misrepresented the facts to the National Refining Company concerning the mailing of the Wagner rentals. The plaintiff predicates his contention on the well known principle that there is a strong fiduciary relationship existing between partners and from this draws a conclusion that there was a misrepresentation knowingly and wilfully made merely because the outcome of the quiet title action was unsuccessful for the the lessees. It would be going beyond all bounds of reason to hold that a person asserting a thing to be a fact had done so falsely after it is finally judicially determined that his assertion was not supported by evidence sufficiently strong enough to convince the court of its veracity. If such were the law, then every suit prosecuted would give rise to another suit either for malicious prosecution, fraud, perjury, or some other criminal or civil action.

■ It is seen from above that the Wagner lease was lost and no interest in it retained by either the defendant or the National Refining Company after its termination on August 15, 1945. The plaintiff did not acquire his alleged interest in the Wagner lease until the assignment to him and his wife dated January 8, 1946. These assignments specifically referred to the court action involving the Wagner lease, and the Gilroys were well aware of the fact that they might get nothing by the purchase. The greatest possible interest, or right, that the Gilroys' assignor could have had in the Wagner lease at the time of the assignment was a possible chance to retain the lease by a court decision in favor of the

plaintiffs in the quiet title action, or perhaps a tort action against its partner for the loss. The Gilroys could not have possibly received any greater right by the assignment for *nemo potest plus juris ad alium transferre quam ipse habet*.

One of the peculiarities of a mining partnership is that one partner's interest may be assigned or sold without dissolving the partnership. In other words, the principle of delectus personae does not apply to a mining partnership. The Gilroys became mining partners with the defendant and the William Whitman Company by virtue of the assignments dated January 8, 1946, but they did not become mining partners in so far as the Wagner lease is concerned, for that lease was no longer an asset of the partnership at the time of the assignment. One who purchases an oil and gas lease from a party to a pending action involving the title thereto, cannot possibly acquire a greater right in the lease than his assignor had at the time of the assignment. Turben v. Douglass, 76 Okl. 78, 183 P. 881; U.S. v. Brown, D.C.Okl., 15 F.2d 565. Furthermore, the assignments to the Gilroys did not purport to transfer any cause of action that the Gilroys' assignor may have had against the defendant, but regardless of this such an assignment of a cause of action would have been ineffective for a tort action may not be validly assigned, Kansas City, M. & O. Ry. Co. v. Shutt, 24 Okl. 96, 104 P. 51; McCrum v. Corby, 11 Kan. 464.

This court can only speculate as to the reason for the letter of February 28, 1946, set out herein. Perhaps it was pangs of conscience which prompted such a letter, but albeit, the legal effect of that letter must be determined. It is extremely doubtful that the purported acceptance some two and one half years after the offer was made, would be valid in the absence of an estoppel as to time for acceptance. In the case of Old American Life Ins. Co. v. Biggers, 10 Cir., 172 F.2d 495, 8 A.L.R.2d 781, it was held that an executory promise is all that is necessary if there is a valid moral obligation; as a result, if the letter of February 28, 1946, can be considered an executory promise, the legal efficacy of the acceptance

or lack of it is not important. The moral obligation referred to in the Old American case is based upon 15 O.S.A. § 107.

Assuming arguendo that the acceptance was valid, or that the offer was an executory promise, is either supported by sufficient consideration? In Fenner v. Sparks, 170 Okl. 556, 39 P.2d 27, 29, the Oklahoma Supreme Court stated the general rule as contained in 5 R.C.L. 881 as follows:

"A doubtful or disputed claim, sufficient to constitute a good consideration for an executory contract of compromise has been defined as one honestly and in good faith asserted, arising from a state of facts upon which a cause of action can be predicated, with reasonable belief on the part of the party asserting it that he has a fair chance of sustaining his claim, and concerning which an honest controversy may arise, although in fact the claim may be unfounded."

The exception to the rule was applied in Oklahoma in the case of Hulen v. Truitt, 188 Okl. 296, 108 P.2d 170, wherein the court held that a contract, the sole inducement for which is the compromise of a foundationless and meritless claim which the party asserting knew had no basis in law or fact, is not valid because of the lack of consideration.

The Gilroys did not have a claim against the defendant due to the loss of the Wagner lease since they never did acquire a valid interest in said lease. They took an assignment some five months after the lease had been terminated and some three months after the quiet title suit had been instituted. Under these circumstances, along with the fact that any action that their assignor had would sound in tort and could not be assigned, it necessarily follows that the plaintiff did not have a doubtful claim which could in good faith be asserted. Over and above this, there is no evidence that the plaintiff promised to do anything or forbear from doing anything in regard to the letter of February 28th, nor did the defendant create a situation which was relied upon by the plaintiff to his detriment which might give rise to an estoppel. The only conclu-

256

sion which can be drawn from these facts is that there was no contract between the plaintiff and defendant arising out of the purported offer of February 28, 1946. This conclusion makes it unnecessary to pass upon the question as to specific performance of the alleged contract, although the court is of the opinion that its terms were too obscure to permit specific performance.

■ There is no more merit to the plaintiff's contention that a constructive trust should be impressed upon the after acquired Wagner lands than there is to his other contention heretofore disposed of. The courts of equity have justly and rightly gone far to impress constructive trusts upon property where the factual situations required such a result. See British American Oil Producing Co. v. Midway Oil Co., 183 Okl. 475, 82 P.2d 1049, and cases cited therein. But nowhere can this court nor counsel for either party to this suit find any case where a constructive trust was impressed upon properties in favor of one partner from another where such property was never at any time held by them jointly or as a partnership asset. Here the plaintiff and defendant were never partners nor joint owners of the Wagner lease which terminated in 1945.

Furthermore, the defendant reacquired a lease of the Wagner lands from a third party on December 15, 1949, which was a period of over four years after the disputed lease was lost to the partnership composed of the defendant and the National Refining Company, and a period of seventeen months after the Kansas decision involving the quiet title suit. During this period the plaintiff was free to acquire the Wagner lease from the third party just as did the defendant.

It is unfortunate that the Wagner lease was lost and at first blush it would seem that the plaintiff should be entitled to some equitable relief, but the fact remains that the plaintiff purchased an interest in a nonexistent lease with his eyes wide open and with the actual knowledge that he would be bound by the decision of the court having jurisdiction of the lease then in controversy.

The case is dismissed with costs to the defendant. Counsel are directed to submit a journal entry in conformity with this opinion within ten days from this date.