### TURNER et al. v. KIRKWOOD.

### No. 716.

Circuit Court of Appeals, Tenth Circuit.

Dec. 2, 1932.

Samuel W. Hayes, of Oklahoma City, Okl., and Richard W. Stoutz, of Tulsa, Okl. (D. A. Richardson and Hayes, Richardson, Shartel, Gilliland & Jordan, all of Oklahoma City, Okl., on the brief), for appellants.

John D. De Bois, of Searcy, Ark., and A. A. Davidson and Preston C. West, both of Tulsa, Okl., for appellee.

Before LEWIS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

### McDERMOTT, Circuit Judge.

The facts presented by this record are those fully stated in the opinion on the first appeal. Turner v. Kirkwood (C. C. A.) 49 F.(2d) 590, 596, certiorari denied 284 U. S. 635, 52 S. Ct. 18, 76 L. Ed. 540. It will suffice here to say that in 1909 Julia A. Turner, the mother of Fred E. Turner and Mrs. Kirkwood, mortgaged certain real estate, and pledged her half of the shares of stock in the Old Homestead Company, to secure an indebtedness of $450,000 to a St. Louis bank; under the agreement of pledge, Mrs. Turner was entitled to the dividends on this stock during her lifetime. Turner, who owned the other half of the Old Homestead shares, and his mother in 1914 formed the Eureka Realty Company and issued its stock in exchange for property of the Old Homestead Company. The Old Homestead Company then distribut-

ed the Eureka Company stock as a dividend to Fred Turner and his mother. This device, if successful, would have deprived the St. Louis bank of much of its security. Mrs. Turner then made a gift of 1,998 shares of the Eureka Company stock to her daughter, appellee here, who was innocent of any wrongdoing; the certificate was issued to Fred Turner as trustee for appellee.

The St. Louis bank could, doubtless, have followed this stock into the hands of appellee who, while innocent, was not a purchaser for value. Or it could pursue Turner and his mother for their fraud in depriving it of its security. It chose the latter course; it brought an action to foreclose its mortgage on the real estate, its pledge on the Old Homestead stock, and for damages in the sum of $150,000 and interest against Turner and others for the conversion of that part of its security represented by the Eureka stock. On April 28, 1917, a decree was entered as prayed for, including a money judgment against Turner for $157,982.89. This decree, into which was merged the rights of the St. Louis bank, did not impair Mrs. Kirkwood's beneficial ownership of the Eureka stock. If Turner had complied with the decree, Mrs. Kirkwood would have owned the stock. In October, 1917, Turner and the bank entered into a written contract by which the bank agreed to release its judgment against Turner personally in consideration of Turner transferring to it the Eureka stock, 1,998 shares of which were the property of his sister and had been issued to him as her trustee, a gift from her mother. A part of that contract reads:

"Also to modify said decree so as to set aside the personal judgment entered against F. E. Turner and in lieu thereof direct him to deliver to the Bank three thousand nine hundred ninety-six (3996) shares of the capital stock of the Eureka Realty Company and all dividends declared upon said stock since the 4th of August, 1904, and in such other respects as may be advisable."

The effect of this is unmistakable. Turner used his sister's stock, of which he was trustee, to discharge a personal judgment against himself.

In accord with this contract, the decree was amended; a sale of the mortgaged real estate, the pledged Old Homestead stock, the Eureka stock, including that of appellee, was directed; the bank bought at the sale for Turner. By these machinations, Turner acquired all of his mother's estate, and also the Eureka stock which his mother had given to his sister. In return, he satisfied the bank.

Upon discovery of these facts, appellee in 1919 filed simultaneously these two suits. The suits were early consolidated and tried as one. Construing them together, the appellee sought relief on two grounds, one that Turner purchased all of the properties sold at the foreclosure sale as trustee for the heirs of his mother; the other, that Turner appropriated 1,998 shares of Eureka stock, standing in his name as trustee for appellee, to his own use, in violation of his duty as trustee. The assignment to him as trustee for his sister, the written contract by which he appropriated it to discharge a personal judgment against himself, are attached as exhibits to the bill. The prayer is that the stock be transferred to her, and that Turner account for all profits thereon from the date of its misappropriation, October 10, 1917, and not from the date of the foreclosure sale, months later.

The cases pended more than ten years. During that time, Turner dissolved the corporations and took title to the real estate in the name of himself and wife. In 1930 the trial court found, upon ample evidence, all the issues of fact in favor of appellee. Being of the opinion that Turner was not eligible to purchase at the foreclosure sale, the decree awarded appellee an interest in all the properties of her mother's estate acquired by appellant at that sale, subject to a lien for the amount expended in acquiring them, an equitable condition invited by appellee in her prayer for such relief. Included in this decree was an award to appellee of a 24.975 per cent. interest in certain described real estate, which was owned by the Eureka Company at the time of its dissolution.

Notwithstanding the strong equities supporting the trial court's decree, this court held that Turner was eligible to purchase at the foreclosure sale in his own right, and that by such purchase, appellee was effectively cut off from participation in so much of her mother's estate as was then sold. The decree entered was reversed; since Turner rightfully bought at the sale personally, his sister had no interest arising from the sale; that part of the decree awarding him a lien on her interest for the purchase price was necessarily reversed. If he bought as trustee, he may have been entitled to a lien on the trust properties for moneys personally advanced, as the trial court held. But this court held, in accord with Turner's contention, that no trust relationship arose from the sale. There could be, therefore, no obligation from a non-existent cestui que trust to a non-existent trustee, on a non-existent trust estate; that part of

the decree declaring such obligation had nothing upon which to rest.

This holding denied appellee participation in those properties of which her mother died seized; it left undisposed of the alternative contention, clearly and exactly pleaded and proven by written documents, that Turner converted the Eureka stock given to his sister in her mother's lifetime, to his own use, in violation of his duty as a trustee and a brother. Having failed in her claim for a share in all, no reason was or is apparent why she should not be awarded relief to a part to which she was and is clearly entitled. Accordingly our opinion directed:

"Fred E. Turner wrongfully delivered such trust property to the bank. He reacquired it at the foreclosure sales. He caused the Eureka Company to transfer its assets to him and Gunter M. Turner. The trust property was thus converted into the real estate now held by him and Gunter M. Turner. Neither of them was a bona fide purchaser for value without notice of the trust. It follows that Mrs. Kirkwood is entitled to recover from Fred E. Turner and Gunter M. Turner 24.975 per cent. of the real estate conveyed by the Eureka Company to Fred E. Turner and Gunter M. Turner, and to have an accounting for the rents and profits thereof, less a reasonable allowance for the care, custody and management of the trust property."

The Eureka stock, belonging to appellee, is now represented by the 24.975 per cent. interest in the particular real estate described in the original decree. In short, this court held that appellee was entitled to a part of the properties awarded her by the decree appealed from, but upon a different ground than that assigned by the trial court.

The trial court proceeded in accord with this mandate. The parties stipulated into this record the evidence included in the record on the former appeal, and stipulated the additional facts necessary for the accounting. The only question properly before this court, on this appeal, is whether the trial court carried out our mandate. The trial court's action is challenged in but one respect. The parties stipulated that the Eureka Company was dissolved on July 1, 1922; that the dividends paid Turner, on stock belonging to his sister, from the date of its conversion to the date of the dissolution of the corporation, amounted to $8,555.27; that the rents and profits of the real estate representing the stock less proper disbursements, from date of dissolution to the date of the decree, amounted to $39,064.97. The decree allowed appellee these stipulated sums, but denied her claim for interest thereon.

It is claimed that the item of $8,555.27 is not within the mandate; it is said that the opinion spoke only of rentals from real estate, and said nothing of dividends from the Eureka stock. The claim is specious for at least two reasons: the wrong done, as a cursory glance at the opinion shows, was the misappropriation of stock. The opinion spoke of real estate because the appellant dissolved the corporation, and it became necessary to follow the stock into real estate. The trial court's allowance of dividends on the misappropriated stock until dissolution, and rents and profits thereafter, is in accord with an intelligent understanding of the opinion. Furthermore, if the claim were technically sound, it is entirely without substance, for the parties stipulated that the dividends represented the net revenues from the real estate. Appellant's prayer, therefore, is that we strike out $8,555.27 as dividends, and allow $8,555.27 as rents from real estate. A motion was made, in this case, to retax the costs as allowed in the decree reviewed on the former appeal. The trial court properly denied this motion. The same argument was made to this court in the first appeal; we believed that appellant had no ground to object when only one-half the principal costs was assessed against him. The trial court properly declined to modify a decree which this court refused to modify on appeal. Moreover, the term had expired and the costs complained of have been paid.

This opinion might well end here. The other contentions made are directed solely to the proposition that this court erred in part in its former opinion. It is conceded that the opinion is sound so far as it denied appellee a share in her mother's estate; but it is vigorously asserted that error was committed in restoring to appellee the stock misappropriated by her trustee and brother. That opinion has become the law of the case. The original appeal had the painstaking consideration of the Judges sitting. An elaborate petition for rehearing was carefully considered and denied. Application for certiorari, supported, as counsel advise on oral argument, by the same arguments now presented to us, was filed, considered, and denied. 284 U. S. 635, 52 S. Ct. 18, 76 L. Ed. 540. Such denial does not mean that the Supreme Court affirmed the decision; it does mean that appellant has had his full day in court; he has exhausted every means, accorded by the law, to confirm his title to his sister's stock.

■ But it is said that the law of the case is not a limitation on power, but is a mere rule of convenience. In Brown v. Lanyon Zinc Co. (C. C. A. 8) 179 F. 309, 310, Judge, now Justice Van Devanter, speaking for Judges Sanborn, Munger and himself, said the rule was settled that "propositions once decided by an appellate court are not open to reconsideration in that court upon a subsequent appeal or writ of error." In Town of Fletcher v. Hickman (C. C. A. 8) 208 F. 118, 121, Judge Sanborn stated that a proposition once decided cannot be questioned on a subsequent appeal. "Such propositions are res adjudicata between the parties to that suit and their privies and constitute the law of the case." See, also, Browne v. Thorn (C. C. A. 8) 272 F. 950. Messinger v. Anderson, 225 U. S. 436, 32 S. Ct. 739, 56 L. Ed. 1152, involved a question of local law. The Circuit Court of Appeals decided it one way (146 F. 929, 7 L. R. A. [N. S.] 1094); later, the Ohio Supreme Court decided it another (Anderson v. United Realty Co., 79 Ohio St. 23, 86 N. E. 644, 51 L. R. A. [N. S.] 477); upon subsequent appeal, the Circuit Court of Appeals followed its early decision (171 F. 785). This was held to be error, the court saying, at page 444 of 225 U. S., 32 S. Ct. 739, 740:

"In the absence of statute the phrase, 'law of the case,' as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power."

Following this decision, the Eighth Circuit Court of Appeals has held that the power exists to reverse a former decision in the same case, but that it should be exercised only under exceptional circumstances. Pennsylvania Mining Co. v. United Mine Workers, 28 F.(2d) 851; Illinois Cent. R. Co. v. Crail, 31 F.(2d) 111 (reversed on other grounds 281 U. S. 57, 50 S. Ct. 180, 74 L. Ed. 699, 67 A. L. R. 1423); Minneapolis Steel & Mach. Co. v. Federal Surety Co., 34 F.(2d) 270. But the rule is not merely one of convenience. It is founded upon a wholesome public policy. Deeply imbedded in our system of jurisprudence is the proposition that every man is entitled to his day in court, but no more. There must be an end to litigation some time; accordingly, litigants may not compel the re-examination of issues once decided. It is better that occasionally an error stand uncorrected, than that disputes be never settled. We agree that if, between two appeals, a pertinent decision is handed down by the Supreme Court of the United States or by a controlling state court, the first decision need not be followed. Utah Power & Light Co. v. United States (C. C. A. 8) 242 F. 924. No such exceptional circumstance is present here. The record is identical with the record on the other appeal, as to the matters sought to be reargued, and no pertinent controlling decision has come down since the first appeal.

■ Notwithstanding this established and salutary rule, we have re-examined the issues because of the contention that the appellant was denied a hearing on the first appeal. This contention is bottomed on the circumstance that appellant's own argument on the first appeal was directed entirely to the error of the trial court in holding that Turner was not eligible to purchase at the foreclosure sale; and that appellee's counsel contented himself with answering that argument. Nothing prevented appellant from arguing, on the first appeal, that no part of the decree could be sustained on either ground presented by the pleadings and proof; nothing compelled appellee to refute an argument not made. The contention comes to this: appellee should be deprived of part of her property because her counsel undertook to sustain a decree awarding her all that she claimed, and did not assert that, in any event, she was entitled to a part of that awarded her. The bill of complaint alleged with precision her ownership of this stock and the fact of its misappropriation in October, 1917; the certificate of stock to her brother as trustee for her, and the contract with the bank by which he agreed to apply her stock to the payment of a judgment against him, were attached as exhibits; the bill specifically prayed for the precise relief awarded by our former opinion. It is not, and cannot be, claimed that the proof did not support the allegations. All that is or can be claimed is that her counsel, in an effort to sustain the decree as to all, did not point out, in his brief, her right to part. Her counsel's failure in this regard does not strip the court of its power to render appropriate relief specifically prayed for on facts well pleaded and clearly proven. Even if the specific relief had not been prayed for, it is settled law that a court of equity may grant appropriate relief under a general prayer. Lockhart v. Leeds, 195 U. S. 427, 25 S. Ct. 76, 49 L. Ed. 263; United States v. Amalgamated Sugar Co. (C. C. A. 10) 48 F.(2d) 156; Minnesota Mut. Inv. Co. v. McGirr (C. C. A. 8) 263 F. 847; Hayward & Clark v. McDonald (C. C. A. 5) 192 F. 890; The Salton Sea Cases (C. C. A. 9) 172 F. 792, certiorari denied 215 U. S. 603, 30 S. Ct. 405, 54 L. Ed.

345; Haggart v. Wilczinski (C. C. A. 5) 143 F. 22, 28; Omaha Horse Ry. Co. v. Cable Tramway Co. (C. C.) 32 F. 727; Story's Eq. Pl. § 41; Foster's Fed. Prac. (6th Ed.) 913. Rude v. Buchhalter, 286 U. S. 451, 52 S. Ct. 605, 76 L. Ed. 1221, is cited as overturning this settled rule of equity practice. We do not so construe it. It was there held that a condition upon a decree could not be imposed without pleading or proof to support it. In Rude v. Buchhalter, there was neither pleading nor proof; here there is exact pleading and indisputable proof.

But if all this were otherwise, it cannot now be claimed that appellant has not been heard. A comprehensive attack upon the first opinion was made in an elaborate petition for rehearing and carefully considered. It was renewed on application for certiorari, and undoubtedly considered, despite counsel's intimation to the contrary. It has been renewed on this appeal; because of the contention that a hearing was denied, it has again been considered; upon such consideration, the court approves of the former opinion in its entirety. Certainly there can be no claim that appellant has not now been three times heard; and in American Surety Co. v. Baldwin, 53 S. Ct. 98, 77 L. Ed. ——, it was held that " 'Due process' requires that there be opportunity to present every available defense, but such opportunity need not be given before entry of judgment."

■ Another contention is now made which, while considered by the court on the former appeal, was not discussed in the opinion because the answer seemed so obvious. While this contention is not open now to review, it may not be amiss to disclose the reasoning by which the court arrived at its conclusion on the first appeal. The original decree awarded appellee an interest in all the property acquired by appellant at the foreclosure sale, and awarded appellant a lien on that interest for the purchase price. Appellee, satisfied with that decree, did not appeal. She sought only to sustain it. She could not therefore, in this court, complain of the condition attached to the decree. Counsel cite the familiar cases holding that, in the absence of a cross-appeal, appellee may only be heard in support of the decree. Those cases hold that, in the absence of a cross-appeal, this court could not have affirmed the part of the decree awarding her an interest in all the property, and reversed the part awarding appellant a lien on that interest. But the decree awarding her an interest in all the properties was not affirmed; it was reversed. Upon this set-tled rule, counsel then engraft an additional rule, without supporting authority, that if an indivisible decree is reversed, conditions imposed therein may not also be reversed without a cross-appeal. The decree is not a separable one; it awarded appellee an interest subject to a lien; the lien cannot stand without the supporting interest. A close analogy is the ordinary decree of specific performance, conditioned upon payment of the purchase price. If the decree is reversed, that part requiring appellee to pay the purchase price is necessarily also reversed. In I. T. S. Rubber Co. v. Tee Pee Rubber Co. (C. C. A. 6) 295 F. 479, it was held that a reversal carries with it all parts of an indivisible decree. In Powers v. World's Fair Min. Co., 10 Ariz. 5, 86 P. 15, it was held that a party appealing from an entire judgment cannot complain of an entire reversal, although the judgment was in part in its favor.

If the lien awarded appellant by the original decree was not reversed, it still exists. That leaves this anomaly: appellee has no interest in the real estate formerly owned by the Old Homestead Company, or the mortgaged real estate of her mother's; yet appellant has a lien of $101,043.08 on an interest which does not exist. That was not the intention of the trial court or of this court. The truth is this: the lower court awarded appellee an interest in all the property because of its holding that appellant bought at the sale as trustee; the lien for sums expended in acquiring the property followed as an inseparable incident of that holding. This court held otherwise, and reversed the decree with its condition. If this suit involved only the sale, appellant would own all the property, and he would have no lien on his own property. But this suit involved more; it involved the appropriation of stock, months before the sale. Appellee was entitled to it, or the real estate representing it; that real estate was a part of the real estate covered by the original decree. The decree was therefore right, in part, but not because of appellant's purchase at the sale, but because of his earlier misappropriation. Appellee could not appeal from a decree in her favor, right in part, because it was based upon an erroneous reason. As to that part, appellant was not and is not entitled to a lien. Appellant expended nothing in appropriating appellee's stock to his own use. He was trustee for her; it had cost him nothing; he simply took it and delivered it to the bank in satisfaction of its judgment against himself. Having expended nothing in acquiring the stock when it was misappropriated, he is entitled to no lien thereon. The

fact that he later bought the same stock at a foreclosure sale, neither added to nor took from the original wrong. Appellant's contention that by the act of misappropriation the stock was relieved of the equitable lien of the St. Louis bank is without merit. The bank did not assert its lien against the stock; it followed the wrongdoer and obtained a judgment against him, as it had a right to do. The choice lay with the St. Louis bank; that it chose a course which did not meet the wishes of appellant does not justify him in appropriating his sister's property.

Whichever way one turns in this case, the fact stands out in bold relief that a trustee appropriated the stock of his cestui que trust, without her knowledge or consent, to satisfy a valid personal judgment against himself. That cannot be done. No justification therefor is seriously attempted; the insistence is that equity cannot grant the relief specifically prayed for, on various grounds of pleading and practice. We do not agree that the rules of equity practice are so inflexible as to deny appellee the relief to which she is so rightfully entitled.

The decree is, therefore, affirmed.