**WILBUR, Secretary of the Interior, v. UNITED STATES ex rel. OSAGE OIL & REFINING CO.**

**No. 5433.**

Court of Appeals of the District of Columbia.

Argued Oct. 7, 1931.

Decided Nov. 9, 1931.

Petition for Rehearing Denied Dec. 5, 1931.

O. H. Graves, of Washington, D. C., for appellant.

C. H. Merillat, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

During the year 1918, the Osage Oil & Refining Company, a corporation, with the approval of the Secretary of the Interior, leased from the Osage Tribe of Indians certain lands supposed to be valuable for oil and gas, located in the state of Oklahoma. The lease provided that it should run for a period of five years and "so long thereafter as oil is found in paying quantities." The refining company put down a well in 1921 which produced forty barrels per day, but within a few months dwindled to five barrels per day, and the total amount sold from the production of this well was 421.88 barrels. The operation of the well ceased in April, 1922, after which no oil was produced by the lessee company during the five-year term which ended August 27, 1923. It conclusively appears that on that date oil was not being produced in paying quantities or in any quantity whatever. The five-year period having expired, the lease was noted on the agency records and on the records of the Indian Office as having expired because oil was not being produced in paying quantities as required under the terms of the lease.

During this period the Osage Oil & Refining Company had become involved in financial difficulties and mortgaged the lease to a creditor to secure the payment of its indebtedness. One Mamie Axelrod purchased the lease at a foreclosure sale, under the mortgage, and the Secretary of the Interior approved the assignment by the sheriff to her. She went into possession of the lands, cleaned out the well, and resumed drilling, and from February, 1926, to May, 1927, produced, at the rate of four or five barrels per day, a total of 404.92 barrels of oil.

In the meantime, the Continental Oil Company, on adjoining lands, brought in a fifteen hundred barrel well and entered into a contract with Axelrod to purchase an undivided one-half interest in her lease for $100,000. On this purchase there was deposited, in escrow, $50,000, pending the approval of the contract by the Secretary of the Interior, and $50,000 was to be paid out of the oil produced. This sale and assignment was approved by the Secretary. On February 25, 1927, the Osage Company brought suit in the United States District Court for the Northern District of Oklahoma against Mamie Axelrod, the Continental Oil Company and others, to set aside the foreclosure proceedings wherein Axelrod had obtained title, to obtain possession, to quiet title against Axelrod, to be subrogated to the benefits of the Axelrod contract of sale to the Continental Oil Company, and to be decreed possession of the escrow deposit of $50,000.

On April 29, 1927, that court decreed the foreclosure sale void and the title to be in the Osage Company, enjoined the defendants, Axelrod and the Continental Company from

holding possession or asserting title to the lease against the Osage Company, and held the Continental Company bound to purchase, from the Osage Company, under the terms of its contract with Axelrod. In the decree the Osage Company was required to "discharge all liens appearing of record in the office of the county clerk of Osage County, Oklahoma, and the office of the Osage Indian Agency that effect or may be a charge against the above leasehold estate shall tender and deliver to the Continental Oil Company full, complete and valid title to an undivided one-half interest in said lease in good standing with the Osage Indian Agency and the Secretary of the Interior and free and clear of any and all liens and encumbrances whatsoever, and if such title can not be given by plaintiff to the Continental Oil Company within thirty days from the time this decree becomes a finality, then the Continental Company shall thereupon and forthwith be entitled to the return to it of the $50,000 herein ordered deposited with the clerk of this court and to a return and repayments from plaintiff of any operating expenses advanced and incurred by the Continental Oil Company in connection with the operation of said lease." The decree also provided in terms that the Continental Oil Company, with the assistance of the Osage Company, should attempt to secure the approval of the Secretary of the Interior, thereby recognizing the necessity of such an approval to make enforceable the decree of the court since the Secretary of the Interior was not a party to the proceedings.

The court also decreed, in the event of appeal by the Continental Oil Company and refusal to accept the assignment and to ask for the approval thereof by the Secretary of the Interior and refusal of the possession of the leasehold estate, that the plaintiff should remain in possession of the property and operate it on behalf of the defendant the Continental Oil Company, and, in the event of the affirmance of the decree, the court should adjust the account of the plaintiff for operating expenses as between it and the defendant.

Appeals from the decree were taken by Axelrod and the Continental Oil Company, but the Osage Company did not regain possession of the premises and in fact had not been in possession since April, 1922. Subsequent to the entry of the above decree, the superintendent of the Osage Agency notified Axelrod and the Continental Oil Company that the lease had expired by reason of non-production of oil in paying quantities and had been so reported to the Indian Office. It

does not appear, however, that the superintendent notified the Osage Company of the expiration of the lease. On November 8, 1928, the Circuit Court of Appeals for the Eighth Circuit affirmed the decision of the court below. Axelrod v. Osage Oil & Refining Co., 29 F.(2d) 712, 730. The court, however, did not assume to control the action of the Secretary of the Interior who was not a party to these suits. On this point, the court said: "Appellant contends that the alleged contract can not be enforced in equity because its validity depends upon approval by a third party—the Secretary of the Interior. * * * There is no effort in the decree to compel the Continental Company to accept a lease from the Osage Company that has not been approved by the Secretary of the Interior. * * * The Axelrod contract provided that, 'if said assignment and this contract are duly approved, then second party shall forthwith carry out and perform all the further agreements herein contained.' In the decree the court provided that the Continental Company with the assistance of the Osage Company, should attempt to secure the approval of the Secretary of the Interior."

Thereafter the District Court attempted, on motion of the Continental Oil Company, to amend its original decree. This proceeding was prevented by a writ of prohibition granted by the Tenth Circuit Court of Appeals [Osage Oil & Refining Co. v. Kennamer, 34 F.(2d) 585], on the ground that the amendments sought to be made, in the decree, covered new and additional defenses. Mandamus, however, was granted to require the Continental Oil Company to comply with the decree of the court as originally entered.

As a result of the foregoing litigation, the Osage Company presented to the Secretary of the Interior, for his approval, an assignment to the Continental Oil Company of a one-half interest in the lease as directed by the court. Objection was made by the Continental Oil Company on the ground that the lease had expired by reason of the lessee's failure to produce oil in paying quantities in compliance with its terms. The Secretary was called upon then to make a thorough investigation and review of the case. After hearing, the Secretary found that the lease had expired through the failure of the lessee to produce oil in paying quantities after its five-year term had ended. He accordingly declined to approve the tendered assignment.

Whereupon the present suit was brought in the Supreme Court of the District of Columbia praying for a writ of mandamus,

commanding the Secretary of the Interior to vacate his finding that petitioner, the Osage Company, had not a good and valid lease; to permit plaintiff company to run and sell oil from the lease; to permit it to deepen an existing well and designate localities for drilling other wells; and to approve the assignment of plaintiff company to the Continental Oil Company of an undivided one-half interest in said lease. The Secretary answered the petition, setting forth the facts heretofore briefly enumerated, to which plaintiff demurred. The demurrer was sustained. Defendant, electing to stand on the demurrer, permitted the entry of judgment from which this appeal was taken.

It should be remembered that neither the Osage Indian Tribe nor the Secretary of the Interior were parties to the various proceedings in court which occurred after the five-year period of the Osage Company's lease had expired. The court proceedings, after the annulment of the foreclosure sale to Axelrod, related entirely to the title to the lease between the Osage Company and the Continental Oil Company, and it seems more particularly to acquiring possession of the $50,000 in escrow. The whole subject-matter of the suits in the courts related to the ownership of the lease. The question, whether the lease had expired by its own express limitation, was not before the courts and they wisely refrained from expressing any opinion thereon, but left it to the determination of the Secretary of the Interior, where it properly belonged.

By the Act of Congress March 2, 1929 (45 Stat. 1478), the whole matter of the jurisdiction of determining the status of the Osage Indian lands and the leasing of the same and the determination of whether or not the leases are complied with, as required by law, is reposed in the Secretary of the Interior. The only limitation upon his power to declare that an existing lease has expired resides in the determination as to whether or not at the termination of such lease it is producing gas or oil in paying quantities.

In the present case, the contract being in existence at the time the act was passed, it came within the proviso of the act, "That nothing herein contained shall be construed as affecting any valid existing lease for oil or gas or other minerals, but all such leases shall continue as long as gas, oil, or other minerals are found in paying quantities." Under the facts disclosed by the record, at the time of the ruling of the Secretary in February, 1930, neither oil nor gas was being found in paying quantities under the present lease at the time of the passage of the 1929 act, and had not been for a long time prior thereto, if indeed paying production had ever existed.

That the land here in question was not producing oil in paying quantities at the end of the five-year period, or any time thereafter, is beyond dispute. With this fact established, there was nothing left for the Secretary to do but to deny the application of the Osage Company and permit his former decision, that the lease had terminated, to stand. It follows that the Secretary, being called upon to examine and pass upon evidence on which to form his judgment in a matter wholly within his jurisdiction, was exercising a quasi judicial discretion which cannot be controlled by mandamus. We are not impressed with the contention that, by the action of the Secretary, the Osage Company have been deprived of any vested rights. Whatever vested rights it acquired, under its lease, were subject to the limitation in the lease providing for its expiration at the end of five years unless oil and gas, in paying quantities, was being produced. Its failure to meet this requirement, at the expiration of the five-year period, operated as a termination of the lease, and its expiration, not through any forfeiture or breach of contract on the part of the Osage Company, but by the express terms of the contract itself.

It is unnecessary for us to consider the effect of the approval, by the Secretary, of the assignment from the sheriff to Mamie Axelrod or of his approval of the Axelrod contract with the Continental Oil Company, since it was later decreed by the court that Axelrod acquired no title in the premises by the sheriff's sale and consequently had no title to transmit to the Continental Oil Company. Certainly the Osage Company is not in a position to come in now and claim any benefit from these approvals by way of extension of its lease. Its lease had terminated by its own limitation so far as it was concerned and there is nothing to show that it had ever been revived, even if revival were possbile. It is therefore in no position to plead estoppel against the Secretary in this action. Indeed nothing was done in this case that would tend to estop the Secretary from taking the action he finally did.

The judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.