CONTINENTAL OIL CO. et al. v. OSAGE
OIL & REFINING CO. et al.*
No. 727.

Circuit Court of Appeals, Tenth Circuit.
Feb. 3, 1934.

*Rehearing denied March 13, 1934; supplemental petition for rehearing denied March 26, 1934.

McDERMOTT, Circuit Judge, dissenting.

See, also, 57 F.(2d) 527.

Chester I. Long, of Wichita, Kan., and D. A. Richardson, of Oklahoma City, Okl. (Robert F. Armstrong and Wm. H. Zwick, both of Ponca City, Okl., and Ray S. Fellows, of Tulsa, Okl., on the brief), for appellants.

W. F. Wilson, of Oklahoma City, Okl. (J. E. Whitehead, of Dallas, Tex., and Wilson, Wilson & Owens, of Oklahoma City, Okl., on the brief), for appellees.

Before PHILLIPS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

PHILLIPS, Circuit Judge.

On August 27, 1918, the Secretary of Interior approved a departmental oil, lease from the Osage Tribe of Indians to the Osage Oil & Refining Company. This lease was for a term of five years from the date of approval, and "so long thereafter as oil is found in paying quantities." It has been the subject of much litigation. For a history of such litigation up to November 8, 1928, see Axelrod v. Osage O. & R. Co. (C. C. A. 8) 29 F.(2d) 712.

The original decree in the instant case was entered on April 29, 1927. It was affirmed by the Eighth Circuit in Axelrod v. Osage O. & R. Co., supra. The mandate was filed January 16, 1929. On February 2, 1929, the Continental Company filed a motion to modify the decree. On June 24, 1929, the trial court entered an order modifying the decree. This order was set aside by this court in Osage O. & R. Co. v. Continental Oil Co., 34 F.(2d) 585, 589. In our opinion in that case we said in part:

"It is our opinion that the only power possessed by the United States District Court for the Northern District of Oklahoma over the decree of April 29, 1927, affirmed by the Circuit Court of Appeals for the Eighth Circuit, is the power to enforce its execution and it should exercise such power unless the Continental Company, within a reasonable time thereafter, obtains leave from such United States District Court to file a supplemental bill setting up facts which, in the judgment of such court, entitles the Continental Company to be relieved from the duty enjoined on it by the decree of April 29, 1927, to purchase a one-half interest in the lease. In which event, issues should be made up and that cause regularly heard and disposed of."

This is an appeal from an order denying a second application for leave to file a supplemental bill. The facts disclosed by the verified bill and exhibits thereto attached, tendered with such application and in decisions upon prior appeals in this cause, are these:

The obligation imposed by the original decree on the Continental Oil Company of Maine to purchase and pay for a one-half interest in the lease, was conditional. The decree in part provided:

"It is further ordered, adjudged and decreed that the plaintiff (Osage Company) shall discharge all liens appearing of record in the office of the County Clerk of Osage County, Oklahoma, and in the office of the Osage Indian Agency that affect or may be a charge against the above leasehold estate and shall tender and deliver to the Continental Oil Company full, *complete and valid title to an undivided one-half interest in said lease in good standing with the Osage Indian Agency, and the Secretary of the Interior* and free and clear of any and all liens and encumbrances whatsoever, and if such title cannot be given by plaintiff to The Continental Oil Company within thirty days from the time this decree becomes a finality, then the Continental Oil Company shall thereupon and forthwith be entitled to the return to it of the $50,000.00 herein ordered deposited with the clerk of this court * * * and The Continental Oil Company shall then surrender to plaintiff any claim to said lease and shall be relieved of any further liability whatsoever to said plaintiff." (Italics ours.)

Pursuant to the direction of the Commis-

sioner of Indian Affairs in his letters of May 8 and 20, 1929, the superintendent of the Osage Indian Agency, after notice to the interested parties, held a hearing with respect to such lease on June 26, 1929.

On June 27, 1929, the Continental Oil Company, a Maine corporation, assigned, conveyed, and transferred all of its property to the Continental Oil Company, a Delaware corporation.

On July 15, 1929, the superintendent made a report to the Commissioner of Indian Affairs on such hearing, in which he found that no oil had been produced on the lease from April, 1922, to August 27, 1923, called attention to his report of February 9, 1929, listing terminated leases and showing such lease to have expired on October 31, 1928, and recommended that the lease be held to have terminated on the latter date.

On September 30, 1929, the trial court entered an order setting aside its order of June 24, 1929. On the same date the Continental Company of Delaware filed in this cause, in the trial court, an application for leave to file a supplemental bill.

On October 11, 1929, the trial court made an order in which it directed the Continental Company of Delaware to accept assignments of an undivided one-half interest in such lease from the Osage Company to the Continental Company of Maine, and within 15 days after the delivery of such assignments by the Osage Company to present them to the Secretary of Interior for approval, all to be without prejudice to the rights of the Continental Company of Delaware to present its application to file a supplemental bill and assert all matters pertaining to the alleged invalidity of such lease.

On December 6, 1929, the superintendent of the Osage Indian Agency made a further report to the Commissioner of Indian Affairs, and accompanied it with a report to him made by William Ash Waid, a U. S. Oil and Gas Inspector, under date of November 26, 1929. The report of the inspector stated that no oil or gas was being produced from said lease at the end of the five-year period.

On February 12 and 13, 1930, a hearing was had before the Commissioner of Indian Affairs in the matter of the approval of the assignments from the Osage Company to the Continental Company, of which the Osage Company had notice, and in which it participated.

On February 25, 1930, the Commissioner of Indian Affairs reported to the Secretary of Interior that there had been no production on the lease during the five-year period after April, 1922, and that the lease had expired by its own terms, and recommended that the assignments be disapproved. This recommendation was approved on February 26, 1930, by the first assistant Secretary of Interior.

On March 8, 1930, the Osage Company brought a proceeding in the Supreme Court of the District of Columbia to secure a writ of mandamus directing the Secretary of Interior to approve such assignments.

The amended answer of the Secretary of Interior to the petition in mandamus in part states:

"He admits the bringing in by plaintiff (Osage Company) on or about May 4, 1921, of an oil well from which plaintiff ran only 421.88 barrels of oil up to and including the month of April, 1922, when production ceased and plaintiff apparently abandoned said premises. Thereafter no further interest was manifested by plaintiff in said leased premises. Requests of the Superintendent of the Osage Agency, in the meantime, that overdue accrued rentals be paid by plaintiff on this and other leases, and that this well be 'plugged in' were without response from plaintiff and then in a reasonable period following May 17, 1924, after notices of termination because of non-production had been sent to all record owners of said lease, including plaintiff, under dates of August 30, 1923, January 5, and May 17, 1924, the lease was noted on the records of the Superintendent of the Osage Agency as having expired because of non-production. Abandonment by plaintiff was further evidenced by reports from the chief oil and gas inspector concerning that period that no work was being performed on the lease and that pipes had rusted out and that grass had grown up through the derrick floor. * * *

"The decision of the Secretary of the Interior herein was the decision of a question of fact, to wit, that the lessee plaintiff, had ceased producing either oil or gas in paying quantities under its said lease; that 'after April 22 the lease was wilfully neglected if not completely and intentionally abandoned' by plaintiff; that the lease had expired by limitation. * * *

"The defendant says that subsequent to August 26, 1923, and long before the filing of the petition in this case, it was a fact that the oil well upon the land in question had not been operated with regularity, and that at

such times as it was operated it yielded only about one barrel of oil a day. * * *

"The defendant says that subsequent to August 26, 1923, and long prior to the filing of the petition in this case, it was a fact that such royalty as was paid upon the oil produced from the land in question did not afford a fair and reasonable compensation to the Osage Indian Tribe for the use of its land. And it was a fact that oil no longer was found upon the land in 'paying quantities' to either the lessor or the lessee. * * *

"Therefore said lease did not exist at the time the petition in this case was filed and does not exist at this time and the plaintiff has no right to be awarded a writ of mandamus to require the defendant to reinstate the same."

The Supreme Court of the District of Columbia sustained a demurrer to such amended answer, and on April 18, 1931, ordered that a writ of mandamus be issued directing the Secretary of Interior to approve such assignments.

On November 9, 1931, the Court of Appeals of the District of Columbia reversed the judgment of the Supreme Court in the mandamus proceedings. See Wilbur v. United States, 60 App. D. C. 326, 54 F.(2d) 437, 438. We set out the pertinent portions of the opinion therein in note.[1]

The supplemental bill tendered with the application filed by the Continental Company of Delaware herein, on September 30, 1929, alleged that the Osage Company had neglected to operate the lease pending the appeal from the original decree, as required by such decree; that by reason thereof the lease had ceased to produce oil in paying quantities and had expired according to its terms; that the Secretary of Interior had declined to approve the assignments, and that the Osage Company had failed to tender a good title. On April 14, 1931, the trial court denied the Continental Company of Delaware leave to file such supplemental bill. This order was affirmed by this court in Continental Oil Co. v. Osage O. & R. Co., 57 F. (2d) 527, in which we held that it was the duty of the Continental Company of Maine to perform the decree of April 29, 1927, and that it was precluded from setting up the termination of the lease, caused by its failure to operate it after that date, and the re-

---

[1] "The decree [a] also provided in terms that the Continental Oil Company, with the assistance of the Osage Company, should attempt to secure the approval of the Secretary of the Interior, thereby recognizing the necessity of such an approval to make enforceable the decree of the court since the Secretary of the Interior was not a party to the proceedings. * * *"

[a] The decree entered in the instant case on April 29, 1927.

"The court, however, did not assume to control the action of the Secretary of the Interior who was not a party to these suits. On this point, the court [b] said:

" 'Appellant contends that the alleged contract can not be enforced in equity because its validity depends upon approval by a third party—the Secretary of the Interior. * * * There is no effort in the decree to compel the Continental Company to accept a lease from the Osage Company that has not been approved by the Secretary of the Interior. * * * The Axelrod contract provided that, "if said assignment and this contract are duly approved, then second party shall forthwith carry out and perform all the further agreements herein contained." In the decree the court provided that the Continental Company with the assistance of the Osage Company, should attempt to secure the approval of the Secretary of the Interior.' * * *" Page 438 of 54 F.(2d).

[b] The Court of Appeals of the 8th Circuit in Axelrod v. Osage O. & R. Co., 29 F.(2d) 712, 730.

"As a result of the foregoing litigation, the Osage Company presented to the Secretary of the Interior, for his approval, an assignment to the Continental Oil Company of a one-half interest in the lease as directed by the court. Objection was made by the Continental Oil Company on the ground that the lease had expired by reason of the lessee's failure to produce oil in paying quantities in compliance with its terms. The secretary was called upon then to make a thorough investigation and review of the case. After hearing, the Secretary found that the lease had expired through the failure of the lessee to produce oil in paying quantities after its five-year term had ended. He accordingly declined to approve the tendered assignment. * * *" Page 438 of 54 F.(2d).

"The court proceedings, after the annulment of the foreclosure sale to Axelrod, related entirely to the title to the lease between the Osage Company and the Continental Oil Company, and it seems more particularly to acquiring possession of the $50,000 in escrow. The whole subject-matter of the suits in the courts related to the ownership of the lease. The question, whether the lease had expired by its own express limitation, was not before the courts and they wisely refrained from expressing any opinion thereon, but left it to the determination of the Secretary of the Interior, where it properly belonged. * * *" Page 439 of 54 F.(2d).

"That the land here in question was not producing oil in paying quantities at the end of the five-year period, or any time thereafter, is beyond dispute. With this fact established, there was nothing left for the Secretary to do but to deny the application of the Osage Company and permit his former decision, that the lease had terminated, to stand. It follows that the Secretary, being called upon to examine and pass upon evidence on which to form his judgment in a matter wholly within his jurisdiction, was exercising a quasi judicial discretion which cannot be controlled by mandamus. * * *" Page 439 of 54 F.(2d).

"It is unnecessary for us to consider the effect of the approval, by the Secretary, of the assignment from the sheriff to Mamie Axelrod or of his approval of the Axelrod contract with the Continental Oil Company, since it was later decreed by the court that Axelrod acquired no title in the premises by the sheriff's sale and consequently had no title to transmit to the Continental Oil Company. Certainly the Osage Company is not in a position to come in now and claim any benefit from these approvals by way of extension of its lease. Its lease had terminated by its own limitation so far as it was concerned and there is nothing to show that it had ever been revived, even if revival were possible. * * *" Page 439 of 54 F.(2d).

fusal of the Secretary of Interior to approve the assignments on account thereof.

On July 16, 1932, the Continental Company of Maine and the Continental Company of Delaware filed a second application for leave to file a "supplemental bill in the nature of a bill of review." The bill tendered with such application, after stating the jurisdictional facts, alleged: That about June 27, 1929, the Continental Company of Maine transferred, assigned, and conveyed all of its property, assets, rights, and choses in action to the Continental Company of Delaware; that the Continental Company of Delaware was made a party to this action by the order of October 11, 1929, and was required to perform, in lieu of the Continental Company of Maine, the acts and things required of the latter by the decree of April 29, 1927; that the decree of April 29, 1927, adjudged that the Continental Company of Maine should purchase from the Osage Company an undivided one-half interest in such lease upon the condition that the Osage Company should tender and deliver to the Continental Company of Maine full, complete and valid title to an undivided one-half interest in such lease, in good standing with the Osage Indian Agency and the Secretary of Interior, and adjudged that if good title could not be given within thirty days from the date the decree became a finality, the Continental Company of Maine should be entitled to have returned to it the $50,000 deposited with the clerk of the court by the Continental Company of Maine; that such lease was dated July 22, 1918, and was for a term of five years from the date of its approval, August 27, 1918, and as long thereafter as oil should be found in paying quantities thereon.

The bill further alleged that on June 26, 1929, pursuant to directions from the Commissioner of Indian Affairs, the superintendent of the Osage Indian Agency held a hearing upon the question of whether such lease had expired by its own terms; that the Osage Company had notice of such hearing and was present at and participated therein; that the superintendent found, and on December 6, 1929, reported to the Commissioner of Indian Affairs, that no oil had been produced from such lease by the Osage Company after the five-year period, and that such lease had expired and terminated by its own terms; that thereafter the Commissioner of Indian Affairs held a hearing, of which the Osage Company had notice and at which it appeared and participated, on whether such lease had expired and on the question of approval of such assignments, and that the

Commissioner of Indian Affairs on February 25, 1930, reported to the Secretary of Interior that such lease had expired by its own terms in 1923, and recommended that such assignments be not approved; that on February 26, 1930, the Secretary of Interior, on the evidence produced before such superintendent and Commissioner, and the findings made by them, found and held that such lease had expired by its own terms at the end of the definite term in 1923, and refused to approve such assignments.

The bill also alleged the proceedings in the mandamus action in the District of Columbia, and particularly the decision of the Court of Appeals of the District of Columbia, and its judgment and mandate to the Supreme Court of the District of Columbia.

The trial court denied leave to file such supplemental bill.

█ Where a lease is for a definite term and "so long thereafter as oil is found in paying quantities," the lease expires by its own terms at the end of such term if the lessee is not then producing oil therefrom in paying quantities, except in cases where he is prevented from so doing by an act of the lessor. Union Gas & Oil Co. v. Adkins (C. C. A. 6) 278 F. 854; Anthis v. Sullivan Oil & Gas Co., 83 Okl. 86, 203 P. 187; Perkins v. Sanders, 109 Kan. 372, 198 P. 954; Collins v. Mt. Pleasant O. & G. Co., 85 Kan. 483, 118 P. 54, 38 L. R. A. (N. S.) 134; Baldwin v. Blue Stem O. Co., 106 Kan. 848, 189 P. 920; Chaney v. Ohio & I. Oil Co., 32 Ind. App. 193, 69 N. E. 477. See, also, note 43 L. R. A. (N. S.) 849. If oil is being produced from the land in paying quantities at the end of the definite term, the lease continues so long as oil is so produced, but when production ceases the lease is at an end [United States v. Brown (D. C. Okl.) 15 F.(2d) 565, 567], and if the lessee thereafter continues in possession, his relation with the lessor is that of a tenant at will, and the lease may be terminated by either party on notice. Cassell v. Crothers, 193 Pa. 359, 44 A. 446.

The fact that the lessee has, within the definite term, drilled for and produced oil in paying quantities will not extend the lease beyond the definite term, if such production in paying quantities has ceased at the time of the expiration of the definite term. Union Gas & Oil Co. v. Adkins, supra; Anthis v. Sullivan O. & G. Co., supra; Cassell v. Crothers, supra.

█ Where the lessor refuses to give possession to the lessee or wrongfully obtains an injunction against the lessee restraining op-

erations on the land, it has been held that the definite term will be treated as extended for the length of time that the lessee is thus kept out of possession or restrained from operations by the wrongful act of the lessor. Stahl v. Van Vleck, 53 Ohio St. 136, 41 N. E. 35; Standard Oil Co. of La. v. Webb, 149 La. 245, 88 So. 808.

The conduct of the lessor may create an estoppel which will preclude him from asserting a termination of the lease because of non-production at the expiration of the definite term. Ohio Fuel Oil Co. v. Greenleaf, 84 W. Va. 67, 99 S. E. 274; Hodges v. Miller (Tex. Civ. App.) 244 S. W. 634.

Production by another, without the lessee's assent and against his will, will not extend the lease beyond the definite term. Thomas v. Hukill, 34 W. Va. 385, 12 S. E. 522, 526.

It follows that, if the Osage Company was not producing oil from the leased premises at the expiration of the five-year term and such failure was not due to any fault of the lessor, the lease by its own limitations expired at the end of such term. Wilbur v. United States, supra.

Counsel for the Osage Company contend that a bill of review must be filed within ninety days after the entry of the decree sought to be reviewed, and that when the decree has been affirmed by an appellate court such bill may not be filed without leave of such appellate court.

A bill of review may be filed to correct errors apparent on the face of the record. Under such a bill of review only questions of law which arise on the pleadings, proceedings, and decree may be considered. Matters of evidence and questions of fact may not be presented. Swift v. Parmenter (C. C. A. 8) 22 F.(2d) 142; Purcell v. Miner, 71 U. S. (4 Wall.) 519, 18 L. Ed. 459; Kennedy v. Georgia State Bank, 49 U. S. (8 How.) 602, 12 L. Ed. 1209; Hughes, Federal Practice, § 4492. Such a bill must be filed within the time limited for taking an appeal from the decree sought to be reviewed. Thomas v. Brockenbrough, 23 U. S. (10 Wheat.) 146, 6 L. Ed. 287; Clark v. Killian, 103 U. S. 766, 26 L. Ed. 607; Ensminger v. Powers, 108 U. S. 292, 302, 2 S. Ct. 643, 27 L. Ed. 732; Hagerott v. Adams (C. C. A. 8) 61 F.(2d) 35; Rothschild & Co. v. Marshall (C. C. A. 9) 51 F.(2d) 897, 898. A bill of review based on newly discovered evidence, however, is not subject to such limitation; it is governed by the equitable principles of laches. Central Trust Co. v. Grant

Locomotive Works, 135 U. S. 207, 10 S. Ct. 736, 34 L. Ed. 97; Tilghman v. Werk (C. C. Ohio) 39 F. 680; Hagerott v. Adams, supra; Hughes, Federal Practice, § 4496.

Leave of court is not required to authorize the filing of a bill of review for errors apparent on the face of the record, but a bill of review for newly discovered evidence, where the decree has been affirmed by the appellate court, may not be filed without leave of that court. Hagerott v. Adams, supra; Rothschild & Co. v. Marshall, supra.

In Osage O. & R. Co. v. Continental Oil Co., 34 F.(2d) 585, 589, we quoted from Story's Equity Pleadings (9th Ed.) § 338, as follows:

"A supplemental bill may also be filed, as well after as before a decree; and the bill, if after a decree, may be either in aid of the decree, that it may be carried fully into execution, or that proper directions may be given upon some matter omitted in the original bill, or not put in issue by it, or by the defense made to it. * * * But, where a supplemental bill is brought in aid of a decree, it is merely to carry out, and to give fuller effect to, that decree, and not to obtain relief of a different kind on a different principle; the latter being the province of a supplementary bill in the nature of a bill of review, which cannot be filed without the leave of the court."

Here a dispute has arisen between the parties as to whether the Osage Company has complied with the conditional provisions of the decree, and the rights and obligations of the parties under the decree. The supplemental bill tendered with the application seeks to give effect to and have enforced the conditional provisions of that decree; not to set aside or avoid such decree. It is a supplemental bill, and the Continental Companies had the right to file it without leave of this court.

Counsel for the Osage Company assert that the application of the Continental Companies was properly denied because the matters set up in the supplemental bill tendered therewith should have been set up in the answer of the Continental Company of Maine, as a defense to the cause of action asserted by the Osage Company, and in the supplemental bill tendered with the application filed September 30, 1929.

It is true that the Continental Company of Maine did not set up in its answer to the bill of complaint of the Osage Company any facts with respect to the existence or termi-

nation of the lease as between the Osage Nation and the Osage Company. The court in its decree of April 29, 1927, adjudged that, as between Mamie Axelrod and the Osage Company, the Osage Company was the owner of the lease. That was the only issue as to title in the original suit. The court there did not undertake to pass upon whether the lease was still in effect as between the Osage Nation and the Osage Company. By the conditional provisions of the decree, it reserved that question for future determination. Axelrod v. Osage O. & R. Co., supra (C. C. A.) page 730 of 29 F.(2d); Wilbur v. United States, supra, page 438 of 54 F.(2d), 60 App. D. C. 326. This was proper. Under applicable acts of Congress (section 3, Act June 28, 1906, 34 Stat. 539, 543; sections 1 and 2, Act March 2, 1929, 45 Stat. 1478, 1479) and the express terms of the lease, the determination of that question was reposed in the Secretary of Interior. Wilbur v. United States, supra. Furthermore such a decree would not have been binding on the United States and the Osage Nation, since they were not parties to the suit, and the United States could not have been made a party without its consent.

Under these circumstances we are of the opinion that the Continental Company of Maine was not required to set up the termination of the lease as a defense in such answer, and that the decree of April 29, 1927, does not bar the Continental Companies from setting up the facts alleged in their supplemental bill.

The doctrine of res adjudicata does not apply with the same strictness to interlocutory orders on motions as it does to judgments. Riggs v. Pursell, 74 N. Y. 370; Clopton v. Clopton, 10 N. D. 569, 88 N. W. 562, 88 Am. St. Rep. 749; La Plante v. Knutson, 174 Minn. 344, 219 N. W. 184; Hall Oil Co. v. Barquin, 33 Wyo. 92, 237 P. 255; Johnson v. Nelson, 43 Cal. App. 113, 184 P. 501; Bishop v. Smith, 66 Kan. 621, 72 P. 220; Reeves & Co. v. Best, 13 Colo. App. 225, 56 P. 985; Silvander v. Molthan, 46 S. D. 231, 191 N. W. 837; Steuben County Bank v. Alberger, 83 N. Y. 277; Ford v. Doyle, 44 Cal. 635. The court may grant leave to a party to renew a motion based upon different or additional facts. State v. District Court, 50 Mont. 435, 147 P. 614; Riggs v. Pursell, supra; Ford v. Doyle, supra; Jensen v. Barbour, 12 Mont. 566, 31 P. 592; Weber v. Tschetter, 1 S. D. 205, 46 N. W. 201, 203-204.[2]

Whether the lease expired on August 27, 1923, the end of the definite term, because oil was not then being produced thereon in paying quantities by the Osage Company, was a question primarily for the determination of the Secretary of Interior. The application to file the first supplemental bill was filed September 30, 1929. The hearing before the superintendent of the Osage Indian Agency and the first report of the superintendent antedated the filing of such application. But the second report of such superintendent, the hearing before the Commissioner of Indian Affairs, the report of the latter to the Secretary of Interior, and the decision of the latter were all subsequently thereto, as was the judgment by the Court of Appeals of the District of Columbia.

The tendered supplemental bill is not predicated upon the fact alone that the lease expired August 27, 1923, but upon the determination of that fact by the Secretary

---

[2] In Riggs v. Pursell, supra, the court said:

"We do not understand the rules applicable to judgments as estoppels to be applicable to their full extent to orders made on motions. Prior to the decision in Dwight v. St. John, 25 N. Y. 203, it was considered that a decision made upon a motion had no force as a former adjudication. (Simson v. Hart, 14 Johns. 63-76; Van Rensselaer v. Sheriff of Albany, 1 Cow. 501, 512; Dickenson v. Gilliland, 1 Cow. 481, 495; Smith v. Spalding, 3 Rob. [26 N. Y. Super. Ct.] 615; White v. Munroe, 33 Barb. 650.) In Dwight v. St. John in view of the provisions of the Code giving the right of appeal from orders, a limited effect was given to them as adjudications, binding in case of a subsequent controversy, and it was there held that in the case of an order affecting a substantial right, and appealable, where a full hearing had been had before a referee on a controverted question of fact, the decision of a point actually litigated before the referee and upon the motion was an adjudication binding upon the parties and conclusive to that extent. An examination of the case shows that the effect of an order as an adjudication was thus expressly limited, and that it was not held in that case that the order was conclusive as to a fact which might have been litigated, but only as to one which actually had been litigated and on which there had been a full hearing. Nor was the familiar right of a party to renew a motion upon a different state of facts, or by supplying defects in proof, in any manner questioned or impaired by that decision. In re Livingston, 34 N. Y. 555, 575, the application which was reheard at Special Term was made upon petition and was held to be a special proceeding in equity, not subject to the rules governing motions. Where additional facts are presented or defects in proof supplied, it is quite usual to grant leave to renew a motion which has been denied or to rehear one which has been granted. (Smith v. Spalding. 3 Rob. [26 N. Y. Super. Ct.] 615; Belmont v. Erie R. Co., 52 Barb. 637 and authorities cited.) And in White v. Munroe, 33 Barb. 650, the power of the court to reconsider its decision on the same state of facts is maintained, though such power is rarely exercised. The rule requiring leave to be obtained before renewing a motion is one of practice merely, to avoid confusion and abuses, but does not affect the power of the court to reconsider its decision on a motion, upon additional facts. In this respect such decisions and orders differ essentially from judgments in actions or special proceedings."

of Interior, and the judgment of the Court of Appeals of the District of Columbia. It is therefore based on facts that have arisen since the former application was filed.

It is true that on April 18, 1930, after the Osage Company had filed its response to the first application, the Continental Company of Delaware filed a supplemental application to file a supplemental bill in which it alleged that on February 26, 1930, the Secretary of Interior disapproved the assignments from the Osage Company of Maine "on the ground that the Osage lease had theretofore terminated and that there was not then any lease in force and effect subject to transfer," and stated that it desired to include in its supplemental bill an allegation of such action by the Secretary, but it did not tender any amended supplemental bill; and it did not allege that oil was not being found or produced in paying quantities on the lease at the end of the definite term, April 27, 1923, a finding thereof by the Secretary of Interior, and a loss or termination of the lease because thereof, the basis of the supplemental bill which the Continental Companies now seek to file. No response was filed to the supplemental appli-

cation and the order of the Secretary of February 26, 1930, and the proceedings which led up thereto, and especially the alleged finding by the superintendent of the Osage Agency and the Commissioner of Indian Affairs that oil was not being found on the lease in paying quantities at the end of the definite term, and the alleged approval of such finding by the Secretary, were not introduced nor before the trial court at the hearing on the application to file the first supplemental bill. Indeed it is not clear that the trial court ever passed on the supplemental application. The first application and supplemental bill were predicated on facts which occurred subsequently to the decree of April 29, 1927; and the second application and supplemental bill are predicated on facts which occurred before such decree and since found by the Secretary of Interior. We conclude that the supplemental bill, which the Continental Companies now seek to file, is based on new grounds and tenders new issues not presented by the prior applications of September 30, 1929, and April 18, 1930, and not heretofore passed on by the trial court or this court. See further discussion in note.[3]

---

[3] The dissenting opinion states that the order of the Secretary of Interior disapproving the assignments to the Continental Companies and the opinion of the Court of Appeals of the District of Columbia were considered by this court on the appeal from the order denying leave to file the first supplemental bill. We must assume, however, that they were considered only in so far as they bore on the issues presented by the application to file the first supplemental bill and the application supplemental thereto, which were predicated wholly on facts which occurred subsequently to the decree of April 29, 1927. Surely the court did not on that appeal undertake to decide issues not presented, and did not consider facts wholly irrelevant to such issues.

At the hearing in the trial court on the application to file the first supplemental bill, the order of the Supreme Court of the District of Columbia for a writ of mandamus directing the Secretary of Interior to approve such assignments was introduced by the Osage Company. Pending the appeal from the order denying leave to file the first supplemental bill, the Court of Appeals of the District of Columbia reversed such order for a writ of mandamus. At the hearing on such former appeal the decision of the Court of Appeals of the District of Columbia was pertinent to show such reversal, and for no other purpose.

Furthermore, what was said in the opinion by this court on such former appeal and in the order denying the petition for rehearing filed therein, must be read and considered in the light of the issues presented by the pleadings and the facts relevant to those issues. We cannot assume that the court considered facts not pertinent to the issues made by the pleadings, nor that it decided questions not presented thereby. The opinion upon such former appeal does not indicate that this court undertook so to do. It in part states:

"Appellant suggests in the briefs that the mere fact that the lease expired is enough; that the subject-matter of the decree no longer exists; there can be no approval of a non-existing lease, and with-

out such approval the appellant is entitled to the return of the $50,000.00 under the decree. * * *

"But this is not the issue tendered, either by the application to file the supplemental bill, or by the bill itself. Both set out that appellee failed to carry out the decree; the application then states 'by reason of such failure and default on the part of said plaintiff, the lease involved in this case has terminated'; the bill alleged that 'by reason of the failure to operate the above leasehold estate by the Osage Oil & Refining Company after the original decree of this court of April 29, 1927, said lease was by such company allowed to terminate.' "

—thereby showing it was confining its consideration strictly to the issues presented.

After a further consideration of the records in this and the former appeal, we adhere to our conclusion that the second supplemental bill is predicated on the alleged fact that oil and gas was not being found on the lease at the end of the definite term, August 27, 1923, the alleged finding of such fact by the superintendent of the Osage Agency, the Commissioner of Indian Affairs and the Secretary of Interior after the application to file the first supplemental bill had been filed, and the legal effect of such finding as adjudged by the Court of Appeals of the District of Columbia, and that this court has not heretofore passed upon the claimed rights of the Continental Companies to relief under the conditional provisions of the original decree on account thereof.

Furthermore, if in fact, due to neglect for which the Osage Company alone was responsible, oil was not being found on the lease at the end of the definite term, August 27, 1923, and the lease, because thereof, had terminated long before the decree of April 29, 1927, and the Secretary of Interior and his subordinates since such decree and since the first application to file a supplemental bill was filed has found such fact and declared such termination, a court of equity should not be too assiduous to discover technical grounds to enforce a decree that will

It follows that the denial of the former application to file a supplemental bill is not a bar to granting the present motion.

Nor were the Continental Companies guilty of laches. The facts on which the present motion and supplemental bill are predicated arose in 1930 and 1931, and the application to file the bill was filed in July, 1932. The filing thereof might well have been delayed until the final determination of the mandamus case.

A finding by the Secretary of Interior that the Osage Company was not producing oil and gas from the lease on August 27, 1923, and that the lease terminated on that date, would be binding on the courts in the absence of a showing that the Secretary's action was arbitrary or fraudulent. Heath v. Wallace, 138 U. S. 573, 11 S. Ct. 380, 34 L. Ed. 1063; Burfenning v. Chicago, St. P. M. & O. R. Co., 163 U. S. 321, 16 S. Ct. 1018, 41 L. Ed. 175; Miller v. United States (C. C. A. 10) 57 F.(2d) 987.

In the mandamus proceeding in the Supreme Court of the District of Columbia, the Secretary of Interior alleged such a finding and determination. There was a demurrer to such answer. The demurrer was sustained. The Secretary stood on his answer and appealed. The facts assumed in Wilbur v. United States, supra, are necessarily the facts well pleaded in the answer. Whether the Secretary of Interior in fact made such a finding and determination is still a question to be determined.

The decision of this court in Continental Oil Co. v. Osage O. & R. Co., 57 F.(2d) 527, precludes the Continental Companies from setting up any default on the part of the Osage Company, which would cause a loss or termination of the lease, that occurred subsequently to the decree of April 29, 1927, but not any such defaults that occurred prior thereto.

Clearly any defaults by the Osage Company resulting in a termination of the lease prior to the decree of April 29, 1927, were not caused or induced by any act or omission of the Continental Companies. For such defaults the Osage Company alone was responsible. Nor were the Continental Companies required to present other than the facts and all the facts to the Secretary of Interior when presenting the assignments for approval.

The decree of April 29, 1927, was conditional. If the Osage Company, prior to such decree, committed defaults which resulted in a termination of the lease and the Secretary of Interior has since so found, and the Osage Company because of such defaults and resultant termination of the lease was disabled from complying with the conditional provisions of the decree, the Continental Companies should be permitted to set up by supplemental bill and prove such defaults, resultant loss, and finding, and invoke their rights under such conditional provisions. We so held and indicated the proper procedure in Osage O. & R. Co. v. Continental Oil Co., 34 F.(2d) 585. The Continental Companies have never been permitted to file a supplemental bill and assert their rights under such provisions. They have never had their day in court on their claimed rights in a proper proceeding.

We are of the opinion that the supplemental bill on its face states ground for relief under the conditional provisions of the decree of April 29, 1927, and that the trial court should have granted the application.

The order is reversed with instructions to permit the filing of the supplemental bill.

KENNEDY, District Judge (concurring).

I concur fully in the opinion of Judge PHILLIPS, but may add that after all the matter before us is whether or not the trial court erred in refusing to allow the appellant to file its supplemental bill in the nature of a bill of review which seeks to present matters pertinent to, but not presented by the issues as framed when the case was before the trial court or the appellate court, and we are not now directly concerned with what disposition the trial court may make of the case upon those issues when and if joined; and, next, the matter to be determined seems important, because the situation suggests the taking of $50,000 from one litigant and giving it to another without consideration and in the absence of terms of the original assignment being satisfied, which important and serious question will otherwise be disposed of merely upon the attempted analysis of voluminous and complex pleadings.

McDERMOTT, Circuit Judge (dissenting).

---

result in taking $50,000 from the Continental Companies for the assignments of a lease that had ceased to exist at the time that decree was entered, when that decree contains a conditional provision to protect the Continental Companies against such a failure of title.

This is the fifth appearance in the Courts of Appeal of this controversy over $50,000.-00 which the Continental Oil Company paid down on a lease it agreed to buy in April, 1926, and which it later concluded it did not want. Axelrod v. Osage Oil & Refining Company (C. C. A. 8) 29 F.(2d) 712; Osage Oil & Refining Company v. Continental Oil Company (C. C. A. 10) 34 F.(2d) 585; Continental Oil Company v. Osage Oil & Refining Company (C. C. A. 10) 57 F.(2d) 527, certiorari denied, 287 U. S. 616, 53 S. Ct. 17, 77 L. Ed. 535; Wilbur v. United States, 60 App. D. C. 326, 54 F.(2d) 437.

I cannot agree to a reversal for this reason: The only possible justification for permitting a second supplemental petition to be filed is because material facts have occurred since the first application was filed. Counsel for the Continental recognize this necessary limitation, and the first paragraph of the present application recites that it is filed "because of material facts which have occurred since the rendition of said decree and supplemental decree or order and since these defendants filed and presented their former application for leave to file a supplemental bill in said cause."

The first application was filed September 30, 1929, denied by the trial court April 15, 1931, and its order affirmed March 14, 1932. The present application rests, as it must, on two events: The order of the Secretary of the Interior of February 26, 1930, disapproving the assignments, and the opinion of the Court of Appeals of the District of Columbia of November 9, 1931. Both that order and opinion were before this court, elaborately briefed and argued, carefully considered and decided. Continental Oil Company v. Osage Oil & Refining Company (C. C. A. 10) 57 F.(2d) 527, 531, et seq. The Supreme Court denied certiorari, 287 U. S. 616, 53 S. Ct. 24, 77 L. Ed. 535. I can see no adequate reason for permitting these two matters—and that is all that is or can be before us on this second application—again to be litigated. While our former decision was not a technical adjudication, it is the law of the case. In Turner v. Kirkwood (C. C. A. 10) 62 F.(2d) 256, an effort was made to re-argue, before a court of different personnel, questions decided on an earlier appeal, the effort being buttressed by the claim that on the first appeal, the court had decided the case on a ground not presented in the record or briefs. This court held that the first opinion was the law of the case, and the Supreme Court denied certiorari, 289 U. S. 724, 53 S. Ct. 522, 77 L. Ed. 1474. So here, this court has heretofore decided the points now presented; the conclusion of the majority is therefore in opposition not only to our decision on the first appeal, but to our decision in Kirkwood v. Turner. I submit, with great deference, that these two recent decisions of this court ought to be followed or overruled in terms. The rule as to "the law of the case" is a wholesome rule in any court; it is of particular usefulness in a court where the shifting personnel of the court is a constant temptation to lawyers to try their luck before other Judges.

There is an intimation in the majority opinion that the order of the Secretary and the opinion of the District of Columbia Court were not properly before this court on the other appeal and our decision thereon should be disregarded.[1] Let us look first as to the order of the Secretary. On April 18, 1930, the Continental filed in the trial court a supplemental application for permission to file a supplemental bill, reciting that—

"The Continental Oil Company now reports to this court that heretofore, on February 26, 1930, the Secretary of the Interior disapproved the aforesaid assignments from the Osage Oil & Refining Company to the Continental Oil Company, on the ground that the Osage lease had theretofore terminated and that there was not then any lease in force and effect subject to transfer.

"In addition to the matters to be set out in a supplemental bill, as alleged in its application heretofore filed on September 30th, 1929, the undersigned desires to include in said supplemental bill allegations presenting to this court the action of the Secretary of the Interior pertaining to such assignments and the termination of said Osage lease."

While no response was directed to this supplemental application, the narrative statement discloses that upon the trial, held five months after the supplemental application was filed, it was stipulated by counsel that:

---

[1] As I interpret the majority opinion, that is the nub of our disagreement. The fact of disapproval by the Secretary was stipulated upon the trial on the first application to file a supplemental bill. The text of the order was before this court on the prior appeal. I think that this court had a right to consider the text of the order. While the record on this appeal does not disclose the fact that it was before this court, it seems to me that notice can now be taken of the fact. The order is contained in the transcript of the record on the appeal to the Court of Appeals of the District of Columbia, and courts often look to the record in a case to illuminate an opinion.

"Said assignment had then been presented to the Secretary of the Interior with a statement by the assignee that it claimed the said oil and gas lease had expired—there being a provision in the above mentioned order of October 11th, 1929, that the Continental Oil Company might, at all times, assert the invalidity of such lease. This assignment, above referred to, was disapproved by the Secretary of the Interior several months prior to the date of this hearing."

The order of the Secretary does not appear in the record of the trial court proceedings upon the other appeal; the fact of the disapproval was before the trial court, and this court had before it the order itself, although this record does not disclose that fact.

The opinion of the Court of Appeals of the District of Columbia had not been handed down when the trial court decided the first application. Except as a persuasive legal authority, I have never been able to see the bearing which this opinion had on this case. It was the Secretary who disapproved the assignments, and his order stands until set aside by the court with jurisdiction over him. In our former opinion we recognized that his order was a valid and subsisting order. I now recognize it as such. The decision of the Court of Appeals of the District of Columbia holding that the Secretary had pleaded a good defense to a mandamus action does not add a cubit to the stature of an order concededly valid and subsisting.

Be that as it may, that opinion, together with a transcript of the record on that appeal containing the text of the order of the Secretary, were before this court on the first appeal, briefed, argued, and an effort made, perhaps feeble and inadequate, to determine their effect.[2] It is probable that this court could properly have examined the decision of as high a court as the Court of Appeals of the District of Columbia without its being formally introduced. But it was so formally presented. The records of this court disclose that on January 9, 1932, the Continental requested permission to file with this court a certified copy of the opinion of the

Court of Appeals of the District of Columbia, with a supporting brief. The whole matter being in equity, and the authenticity of the opinion being conceded, the request was granted and the opinion filed with the clerk on January 9, 1932. The cause was heard on January 25, 1932, and the opinion of the Court of Appeals of the District of Columbia was orally argued by both sides. The transcript of the record and the briefs in the mandamus case were submitted as a part of that argument. A reply brief, discussing the effect of that opinion, was filed by the Continental on February 9, 1932. An elaborate petition for rehearing, dealing with the opinion of the Court of Appeals of the District of Columbia at length, was filed on April 21, 1932, considered, and denied.

After this court considered at length this opinion and the elaborate briefs at the request of the Continental, for that company now to assert that we had no business so to consider it, and to allege that it is new matter justifying a supplemental bill, is an argument that would be unworthy even in a better cause than this.

Having demonstrated, to my own satisfaction at least, that the only two events occurring since the application was made to file the first supplemental bill have been before this court and decided, this dissent should end here. The majority opinion deals however with several other matters to which I desire to advert.

1. First, as to procedure. I concede that there has not been a technical compliance with formal procedural rules. Under the reservation in the 1927 decree, the Continental was entitled to file a supplemental bill bringing to the court's attention its claims as to events transpiring after the 1927 decree—that the Osage had failed to operate the lease pending appeal, that it could not now make good title, and that the Secretary had disapproved the assignments. This court so held in Osage Oil & Refining Company v. Continental Oil Company (C. C. A. 10) 34 F.(2d) 585. The application to file such a bill should have been promptly granted, and the cause tried on the supplemental bill and

---

[2] The majority opinion labors the point as to what was decided by this court on the former appeal. There is nothing recondite about it. We had before us, at the instance of the Continental, not only the fact that the Secretary had disapproved the assignments because the lease had terminated, but the full text of the Commissioner's report and recommendation endorsed "Recommendation approved Feb. 26, 1930, and the assignment disapproved: Jos. M. Dixon, First Asst. Secretary." We also had before us 111 pages of record disclosing the activities of the Continental in procuring that order. What we held, upon this point, was that the Continental was not entitled to invoke that order. We may have been technical in holding that one who had violated a court decree was not entitled to seek relief against it; but we had a right to be technical, and the Supreme Court declined to review our action. I can see no useful purpose to be subserved by sending the case back to the trial court to read the text of that order. Such procedure may be technically correct, but it seems to me it sacrifices substance to technique.

the response. Instead, the Osage filed a response, going to the merits, to the application instead of to the bill. But the supplemental bill tendered was in the record; the response went to the bill as well as the application; the case was tried on the bill and the response. The pleadings and the evidence being all in the record, this court on the first appeal overlooked the niceties of procedure and decided the case on the merits. If we erred in so doing, it was an error in the interest of expediting this long-drawn out controversy, an error which prejudiced no one, and one which we had the power, if not the right, to commit.

It would perhaps have been better practice, in the court below in the present matter, to have permitted the application to be filed, and for the Osage by way of response to have drawn onto the record the facts as to the conduct of the Continental in bringing about a disapproval of the assignments, as well as the fact that the point has been adjudicated. Since it was not done that way, I see no useful purpose to be subserved by sending the case back in order that the facts may be brought onto the record in a more formal way.

2. The majority opinion cites authorities on the question of when a lease expires by its terms. I take it that the purpose of this is to support the Secretary's refusal in 1930 to approve the assignments, based upon his finding that the lease expired, which is the event relied upon in this application for relief.[3] Certainly the *fact* of expiration in 1923 is not, and cannot, now be before us for several reasons:

(a) It is not within the issues now presented for, as disclosed by the excerpt heretofore quoted, this application is and must be expressly limited to events occurring since 1929, and not those occurring in 1923—before the lease was purchased, before the 1927 decree, and before the first application to file a supplemental bill.

(b) An attempt now for the first time to set up that the lease in fact expired in 1923, would be barred by the 1927 decree, as well as by the failure to bring it forward in the first supplemental bill. The first sentence of the 1927 decree, affirmed 29 F.(2d) 712, is "that the plaintiff, the Osage Oil & Refining Company is the owner of a valid, legal, and subsisting oil lease." [4]   It is true that the 1927 decree provides that the Osage must furnish good title to the lease before it is entitled to the $50,000.00. But a decree, like a contract, must be construed, if reasonably possible, to give effect to all its parts. Applying this settled rule of construction, the decree is entirely clear; it settled the question that a valid lease subsisted in 1927 and that the Osage owned it; since the decree contemplated that there would be the delay in complying with the decree incident to appeal, it reserved the question of any changes in title, by way of liens or otherwise, that occurred after the decree and before compliance, as well as the question of the Secretary's approval of the assignment. That reservation cannot be construed as nullifying the finding that the lease subsisted in 1927 and was owned by the Osage. The decree of 1927 did not bar the Osage Tribe nor the Secretary, for neither was a party. But it does bar the Continental, in this litigation, from now asserting that no lease subsisted on April 29, 1927.

(c) Not only has the Continental not now attempted to set up a defense existing since 1923, but throughout this supplemental litigation it has recognized the futility of so attempting. I need do no more than quote two excerpts from the briefs of the Continental in this court on the prior appeal:

"It may be that as between the Osage Tribe and the lessee, the lease did expire prior to the entry of the 1927 decree, but we, of course, cannot and do not raise that question because as between the Osage Company and Continental Company the lease was found to be in force at the time of the entry of that decree."

"It always scrupulously avoided any claim that lease had expired as between lessor and lessee prior to decree herein."

If the *fact* of expiration in 1923 were involved herein, the question whether the Osage Tribe was estopped to assert a termination in 1923 by accepting royalties from oil produced by the expenditure of moneys on the

[3] It may be noted that the Secretary's order of 1930 (set out in full in the transcript presented by the Continental on the other appeal) was not based on the failure to produce oil in 1923, as intimated by the answer of the Secretary in the proceedings in the District of Columbia, but on the failure of the Osage to operate after 1927. After reviewing the entire case, including the lack of production in 1923, the Secretary's approval of an assignment in 1925 based upon a finding that "the lease has never expired in accordance with its terms but has remained and still is in force and effect," and the failure of the Osage to operate during appeal, the recommendation, approved by the Secretary, concludes that the Osage was derelict in not making an honest attempt to bring the lease into production "after its title thereto had been cleared by the courts" in 1927.

[4] The majority opinion, in its statement of facts, omits this part of the decree.

lease after that date, is at least an interesting one. Orr v. Comar Oil Co. (C. C. A. 10) 46 F.(2d) 59. The fact of termination in 1923 not now being open for our determination, and having been expressly disclaimed by the Continental as a ground for relief, I leave the difficult law on that subject to some case which involves the question.[5]

3. The majority opinion deals at some length with the power of the Secretary to terminate a lease for failure to produce after the expiration of its term, under his power to cancel a lease for violation of its terms. Perhaps he has that power, although Judge Kennamer, in an opinion cited by the majority upon another point, has held that he has not, United States v. Brown (D. C.) 15 F.(2d) 565, and counsel for the Continental contends he has no power to save it from expiring if there is a failure to produce.

This court, on the first appeal, did not enter this enticing but controverted field of law, because we did not see that the Secretary's power to terminate a lease for non-production is involved in the case, for he unquestionably has the power to approve or disapprove an assignment. He did disapprove this assignment, and the validity of that order of disapproval is not challenged in this case, and cannot be since the Secretary is not a party hereto. Whether that order was legally made, whether it rests upon a finding that the lease had expired which he had no power to make, whether a Secretary in 1930 can enter orders contrary to those of his predecessors in 1925 and 1929 upon which rights have vested, are all for the courts of the District of Columbia. It seemed inappropriate on the first appeal to express an opinion thereon, when the court could enter no order in support of its opinion.

Much of the majority opinion deals with the validity of the Secretary's order disapproving the assignments. I concede it is valid until set aside by a court with jurisdiction over him. On the last appeal this court assumed its validity. The opinion on that appeal starts where the present majority opinion leaves off.

When the underbrush is cleared away,

this case is a very simple one. Under the reservation in the 1927 decree, the Osage is not entitled to the $50,000.00 if the Secretary, without fault on the part of the Continental, disapproved the assignments. He has disapproved them, and his order so far has withstood attack by the court having jurisdiction over him and his order. If the case ended there—where the majority opinion leaves it—it would be too plain for argument, and I would immediately concur; if the case had ended there, the decision on the first appeal would have been otherwise.

But the case does not end there. The record on the first appeal disclosed, beyond the peradventure of a doubt, that the activities of the Continental in urging the Secretary to disapprove the assignments were in flagrant violation of the terms of the 1927 decree. That record contained 111 pages of evidence, much of it bearing upon the activities of the Continental in connection with the order now set up as a bar; this record contains none of that. With that record before us, we cited that part of the opinion of this court on the first of the three appeals to this court [34 F.(2d) 585] construing the 1927 decree as imposing upon the Continental the "obligation to accept the assignments tendered into court and to make an honest effort to secure their approval by the Secretary of the Interior." We demonstrated, by facts in the record then before us, that the Continental had contumaciously refused to carry out that decree as so construed; that it declined even to accept the assignments until a specific order was entered to that effect; that it then rendered but lip service to the court's decree; that while formally requesting the Secretary to approve the assignments, it employed counsel to induce the Secretary to deny its written request. We held such conduct was not the "honest effort" which this court held it was obligated to make. We held that one who sought equitable relief must have done equity. To the cases there cited, I may now add the authoritative exposition of that maxim of equity by Mr. Justice Butler in Keystone Driller Co. v. General Excavator Co., 54 S. Ct. 146, 78 L. Ed. ——.

I will not repeat the reasons given by

[5] If the fact of a termination of the lease in 1923 can now be litigated in this action, it could have been litigated in 1927, for the same parties are now before the court as were before it then. The lease either terminated in 1923, when it is said production in fact ceased, or in 1930, when it is said the Secretary so determined. It could not have terminated on both dates; if it was terminated in 1930, it did not expire in 1923. If it terminated in 1923, the 1927 decree now forecloses that defense, under the accepted rule that a decree forecloses all available defenses. If it was terminated by the Secretary's order of 1930, that was before this court on the former appeal. To say it was a combination of the two events, is to assert our power to pass on the Secretary's order when he is not before us, a power elsewhere denied, for even if the trial court should now find it did not expire in 1923 (as the Secretary found in 1925) it still would be powerless to set aside the Secretary's order of 1930.

**32**

this court in its earlier opinion. It was amply supported by the facts in that record; seemed then, and seems now, to be sound in law. The Supreme Court denied certiorari. It does not seem right that that decision should now be overruled, on another record, and with no mention of the point on which that decision was bottomed.

Nor does it seem just that the Continental Oil Company should be permitted to evade its contractual obligation and to thwart the enforcement of a final decree of a court by the expedient of urging an Assistant Secretary of the Interior to disapprove an assignment which the court had ordered that it make an "honest effort" to get approved. In an unguarded moment, counsel for the Continental in a written brief boasted that "we have thwarted plaintiff in its efforts to have the Secretary of the Interior approve assignments to the Continental Oil Company, because we have refused to execute acceptance of such assignments and submit the same." That is to say, by flouting the obligation imposed upon it by the 1927 decree to accept the assignments and to make an "honest effort" to secure their approval, it has so far succeeded in evading its contract and in escaping compliance with a decree of the courts of the United States. On the last appeal, this court held that such conduct could not be countenanced in a court of equity. I adhere to that view.

Believing that the order of the trial court should be affirmed, I respectfully dissent.